## THE ELYSVILLE MANUFACTURING COMPANY, *vs.* THE OKISKO COMPANY.

Upon a bill to enforce a vendor's equitable lien, it was proved that the deed for the land, though upon its face purporting to be in consideration of $25,000 paid by the grantee to the grantor, was executed in compliance with an agreement, by which the grantor, a chartered corporation, was to be paid by the grantee, another corporation, in stock of the latter; that the grantor, through its president, subscribed for such stock, received a certificate for the same, and held, and continues to hold it, and voted it upon several occasions; and that it was actually received in payment of the purchase of the land. HELD:

1st. That this was an *executed* contract, and the *whole* amount of the subscription being paid by the conveyance of the land, the grantor cannot raise the objection, that the cash payment of ten dollars per share was not made *at the time* of the subscription, as required by the charter of the grantee.

2nd. That the grantor's application to be relieved from this contract, and for a sale of the land to pay the purchase money mentioned in the deed, is in violation of good faith and fair dealing, and can receive no sanction from a court of equity.

An application for the enforcement of a vendor's equitable lien is like that for the specific performance of a contract, which equity never grants where it would be grossly violative of the principles of sound morality and justice, though, according to the technical rules of law, the contract would be valid.

Written evidence of the authority of an agent of a corporation to receive and hold a certificate of stock in another corporation, is not necessary, the existence of such authority may be proved by facts and circumstances.

APPEAL from the Court of Chancery.

This is an appeal from a decision of the chancellor, dissolving an injunction and dismissing the bill of the appellants,

reported in 1 *Md. Ch. Decisions*, 392, where, as well as in the opinion of this court, the allegations of the bill and answer are sufficiently stated.

The deed referred to in the proceedings, dated 20th of August 1846, from the complainant to the defendant, was under the corporate seal of the former, and signed by *Thomas Ely as its president*, and purports upon its face to convey the property mentioned in it in consideration of $25,000, current money, paid by the grantor to the grantee, and contains a receipt for the same, and was acknowledged by *Mahlon Ely*, by virtue of a power of attorney contained in the deed.

With the answer were filed:—1st, written articles of association between the five Messrs. Ely and others, who afterwards constituted the Okisko Company, dated in July 1845, by which the Elys agreed to convey the property afterwards conveyed by the above deed to the association, for $25,000, and receive therefor $25,000 in the capital stock of the company, in consideration that the other parties would pay into the joint fund $25,000 in money. 2nd, a copy of the charter of the Okisko Company, act of 1845, ch, 121, passed on the 16th of January 1846. The 8th section of this act provides, "that not less than ten dollars on each share of stock shall be paid in cash at the time of making the subscription." Appended to this copy was a subscription list, dated 21st of January 1846, containing, among others, the following subscription: "Elysville Manufacturing Company, by its president, Thomas Ely, two hundred and fifty shares." The shares were $100 each.

The deed of the 20th of August 1846, was received by Mahlon Ely, the party who acknowledged it, from Thomas Ely, the president of the complainant, and after its acknowledgment was delivered by said Mahlon to Mr. Gosnell, the president of the Okisko Company, and at the same time the said Mahlon received from said Gosnell a certificate for two hundred and fifty shares of the Okisko Company, which he soon after delivered to Hugh Ely, the secretary of the complainant.

20    v. 5

A great mass of testimony was taken in the case, the substance of which sufficiently appears in the opinion of this court and in the opinion of the chancellor, before referred to. The act of 1825, ch. 32, is the charter of the Elysville Manufacturing Company.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*Grafton L. Dulany* for the appellant, argued the following propositions:

1st. Although it was competent to the appellee to prove, that after the execution of the deed it was agreed between the parties that stock, or any other property, should be given and taken instead of and as a satisfaction for the money consideration mentioned in the deed, yet all the evidence in the record of acts, declarations and agreements, of the parties anterior to or at the time of the execution of the deed, is inadmissible to add to, take from, vary or contradict the same. 1 *H. & G.*, 175, *Betts vs. Union Bank.* The deed contains the contract between the parties; the law binding upon them, and therefore binding upon this court. Evidence may be offered to show that the money consideration of the deed was afterwards changed and stock taken in its place, but this cannot be done by evidence, that the *contract in the deed* was not for a money consideration, or, in other words, that the deed is not what it purports to be. The consideration of stock is not offered as an additional consideration, but as a *substituted* one, and is therefore repugnant. 9 *G. & J.*, 81, *Clagett vs. Hall.* 1 *Gill*, 84, *Wolfe vs. Hauver.*

2nd. Upon the whole evidence legally admissible, it is not sufficiently in fact established that the appellant did agree to take and receive the two hundred and fifty shares of the stock of the Okisko Company, as a satisfaction of the consideration of $25,000 mentioned in the deed.

3rd. That the said certificate of two hundred and fifty shares of stock was of no legal validity:—

1st. Because Thomas Ely, who it is alleged subscribed for that number of shares, as president of the Elysville Manufacturing Company, was not authorised by that company and had no power to bind them by any such subscription, and so stated at the time. A corporation cannot commit itself except in one of three modes:—1st, by its seal; 2nd, by a vote, and 3rd, by the agreement of its agents in the terms of its charter properly authorised, which authorization presupposes deliberation and a vote. It is admitted that Thomas Ely did *in fact* subscribe for this stock, but there is no evidence of his authority to bind the company as its president. Hugh Ely swears positively that the Elysville Manufacturing Company had determined not to take the stock, and that Thomas Ely had no authority to make the subscription. Besides, a president is not an officer named in the charter of the company, act of 1828, ch. 32, but all acts are to be done by a majority of its stockholders. On this point, see 8 *Mass.*, 298, *Essex Turnpike Co., vs. Collins.* 13 *Mass.*, 406, *Tileston vs. Newell. Angel & Ames on Corporations*, 212, 215, 257.

2nd. Because neither at the time of the subscription, nor at any time since, was the ten dollars in cash paid upon each share subscribed, as required by the eighth section of the act of 1845, ch. 121, the charter of the Okisko Company. 1 *Caines' Rep.*, 381, *Union Turnpike Co., vs. Jenkins.* 14 *Johns. Rep.*, 244.

3rd. Because the stock of the Okisko Company, or the certificates thereof, by its charter could not be passed off, or taken and received as money. See *Act of* 1845, *ch.* 121, *sec.* 9.

4th. Because the Elysville Manufacturing Company had no power or capacity under its charter to become a stockholder, by subscription of the capital stock of any other manufacturing or other incorporation. *Angel & Ames on Corporations*, 85, 257. 8 *G. & J.*, 248, *Steam Navigation Co., vs. Dandridge.*

*David Stewart* and *John Nelson* for the appellee.

The evidence is unequivocal, clear, and beyond dispute, that the Elysville Manufacturing Company subscribed for

this stock in the Okisko Company, and made the contract that they were to give their land for the stock, and executed the deed in conformity with this contract. The stock was received, used and enjoyed, as the equivalent for the moneyed consideration of $25,000. There is nothing *repugnant* to the deed in this evidence. We paid in stock as the equivalent for money. Suppose we had paid in *bank notes?* That such evidence is admissible, is clearly shown by the cases cited by the chancellor in his opinion. See also 13 *Pet. Rep.*, 89, *Bradley vs. The Washington, Alexandria and Georgetown Steam Packet Company.*

One defence is, that the Elysville Manufacturing Company had no power by its charter to elect a president. But the fourth section of their charter, act of 1828, ch. 32, gives them the power to appoint "all such officers" as they shall deem necessary. Besides, Thomas Ely executed this very deed under which they claim, and signs the appeal bond in this case, *as president of the Elysville Manufacturing Company.*

Another defence is, that the president had no authority to make the subscription. The charter of the Okisko Company was obtained on the 16th of January 1846, and required the books to be opened for subscription. Thomas Ely, the president of the Elysville Manufacturing Company, in presence of three others of the Elys, constituting a majority of that company, subscribed for the two hundred and fifty shares. The deed was executed soon after, and until this bill was filed nobody supposed they were not stockholders. They do no act repudiating their right to the stock, but act as stockholders, sign resolutions of the Okisko Company, and Thomas Ely, as president of the Elysville Manufacturing Company, constantly *voted this stock* in the election of directors of the Okisko Company. They are bound by such acts and acquiescence. 8 *G. & J.*, 106, 108, *Md. Savings Institution, vs. Schroeder.* 12 *Wheat.*, 83, *Bank of the United States vs. Dandridge and others.* 5 *Wheat.*, 326, *Mechanics Bank of Alexandria vs. The Bank of Columbia,*

Le Grand, C. J., delivered the opinion of this court.

The bill in this case was filed for the purpose of enforcing a vendor's equitable lien. It alleges, that the complainant sold to the defendant, on the 20th August 1846, certain real estate for the sum of $25,000, current money, and on the same day executed and delivered a deed for the same, but that although the defendant entered into and has been in possession of the property ever since, it has wholly failed to pay to the complainant the consideration mentioned in the deed. The answer admits the execution and delivery of the deed, but avers that in compliance with the understanding of the parties, the payment for the property purchased of the complainant was to be made in the stock of the defendant, and that in fulfilment of such agreement, the complainant, through its president, did subscribe for two hundred and fifty shares of the stock of the defendant and received the certificate of the same, and as owner of said stock it has held it ever since and voted it on several occasions.

It can hardly be necessary to examine the particulars of the testimony of each witness who has been examined on the one side or the other, for it appears to us as it did to the chancellor, that it is impossible for any one to read it without coming to the belief, that in point of fact the stock was subscribed for and that it was actually received in payment of the purchase made of the complainant. The conduct of the agent and members of the complainant, after the execution of the deed down to the time when this bill was filed, incontestibly establishes, that the contract between the parties was, that the five Messrs. Ely, who constituted the Elysville Manufacturing Company, agreed with the five persons who, with themselves, were to constitute the Okisko Company, to put in the property in question as part of the capital stock of the Okisko, provided those other persons should put in $25,000, at which price the property of the Elysville Manufacturing Company was valued. The conduct and declarations of the Messrs. Ely, as testified to, prove this beyond all reasonable doubt. They can be reconciled with no other hypothesis

It is true the testimony of Hugh Ely denies substantially most of the important facts set up in the answer of the defendant, but the number of the witnesses whose testimony is in conflict with that gentleman's, is so great, and their evidence so positive and unequivocal in its character, that it is impossible any court could be justified in withholding its assent to it.

But notwithstanding this, it is said that the appellant had no power under its charter to subscribe for the stock of the appellee; and moreover, even were it conceded such subscription could legally be made, under any circumstances the one in this case is not binding, because *at the time* of the subscription the *cash* payment was not made. In support of this latter proposition, the case of the *Union Turnpike Company vs. Jenkins*, 1 *Caine's Rep.*, 381, is relied upon. That case is clearly distinguishable from the one before us. There no payment was made, either at the time of the subscription or thereafter, by the person whom it was attempted to make responsible on his subscription, while here the *whole* amount of the subscription was paid; in other words, it is a completely executed contract. In the case to which we have referred, the court evidently founded their decision on the ground of the want of mutuality. The subscriber not having paid, in conformity with the authorized terms of subscription, could not have compelled the transfer of the stock to *himself*, he not having in any way, in part or whole, performed his contract. But in the case before us, the Okisko Company having been fully paid by the conveyance of the property of the appellant, and the latter being in possession of the evidence of the ownership of the stock, no question can now properly arise *as to the time* of the payment. The contract has been fully executed, vesting in the appellant a clear title to the stock, with authority to assign, transfer or otherwise dispose of it.

In regard to the other proposition, it is proper to be borne constantly in recollection, that this proceeding is an application to a court of equity for the exercise of its extraordinary

powers by way of injunction, and for the enforcement of a vendor's equitable lien, in the latter particular not unlike an application for the specific performance of a contract, which courts of equity never grant whenever it would be grossly violative of the principles of sound morality and justice, although, according to the technical rules of law, the contract would be valid.  Again, there is another principle which is uniformly observed, and that is, whoever invokes the aid of a court of equity in his behalf must himself do equity.  In view of these principles, how is the appellant predicamented in a court of conscience?  Thus: by its regularly appointed agents it executes and delivers to the appellee a conveyance of the property, and immediately thereafter receives, in payment therefor, a certificate of the capital stock of the appellee. We do not perceive the force of the argument urged at the bar, that neither Mahlon Ely nor Hugh Ely were the properly authorized agents of the appellant to receive and hold the certificate of stock.  Although no *written* evidence of their authority has been given, there are, nevertheless, circumstances in the case which *compel* the belief, that such authority, in point of fact, was given, and this is all that is required. *Bank of United States vs. Dandridge,* 12 *Wheaton,* 69, 70, 83. Without pointing out distinctly to all of them, it is sufficient to say, the certificate was delivered immediately after the execution of the deed to the party whom, it is confessed, was authorised to make the acknowledgment, and by him soon after delivered to Hugh Ely, the secretary of the appellant, and by its president voted at the meetings of the appellee, with the knowledge of all but one and without objection of any of the Messrs. Ely, who constituted the Elysville company.   Besides all this, until the filing of the bill of complaint there is not the slightest evidence any of them ever pretended the purchase of the stock was not a proper and legal transaction.   So far from it, a great number of witnesses have testified in the most explicit and unequivocal manner to the declarations of all the Messrs. Ely, with the exception of John, to the effect that they had a large interest in the Okisko

Company. These facts are wholly inconsistent and irreconcilable with the averment in the bill, and the testimony of Hugh, and positively affirm the truth of the answer of the appellee. This being so, how can the appellants, with any show of justice, ask the aid of a court of equity to assist them in avoiding the effect of a contract consummated, and which, so long as there was any prospect of advantage being derived from it to themselves, they not only recognized, but insisted on and exercised their rights under it? The inquiry suggests the proper response. Under the circumstances we have mentioned, good faith and common honesty forbid the relief asked.

In the case of *The Maryland Savings Institution vs. Schroeder*, 8 *Gill and Johnson*, 109, a case in its equity and justice very much like the one we are now considering, the court, after speaking of the objection which had been urged by the complainant in that case to the legality of the transaction, whereby his deposites had been converted into the stock of the institution, say: "We think, in the language of the authority just referred to, that it would be an act of fraud and injustice in him; that his conscience is bound by an equitable estoppel. Whether the corporation had a right to make the conversion against his will and consent, under the powers derived from their charter, it is not necessary now to decide; nor do the merits of this controversy depend upon the solution of that question." Again, "To such an attempt, we think a court of chancery, in the exercise of its equity powers, ought to lend no assistance; and that such a suitor should be turned from its doors to seek redress any where rather than in a court of conscience."

Regarding the application of the complainant in this case as equal, to say the least of it, in its disregard of good faith and fair dealing, to that of *Schroeder*, we apply to it the same principles and judgment, and accordingly affirm the decree of the chancellor.

*Decree affirmed with costs.*