WILLIAM TAGGART *vs.* THE WESTERN MARYLAND RAIL ROAD
COMPANY.

CORPORATIONS, SUBSCRIPTIONS TO STOCK OF, PRIOR AND SUBSEQUENT TO ORGANI-
ZATION : PRESUMPTIONS : WAIVER : PRINCIPAL AND AGENT : ACTIONS BY AND
AGAINST CORPORATIONS.—A Rail Road Company was incorporated by Act
of Assembly, with a clause prescribing certain preliminaries to be observed
in opening the books and taking subscriptions for stock; among others,
that "upon every such subscription there shall be paid at the time of sub-
scribing, to the said Commissioners, or to their agents appointed to receive
such subscription, the sum of one dollar on every share subscribed." Books
were opened by the Commissioners, the requisite number of shares sub-
scribed, a Board of Directors and President were elected, and the Company
fully organized. After this organization the defendant subscribed for ten
shares, in one of the subscription books, upon the terms and conditions
prescribed therein and in the charter, with this condition annexed : "Pro-
vided the said contemplated road should be built on the then present track
of the existing branch to "Green Spring" of the B. & S. R. R.," but did not
pay the sum of one dollar per share required by the charter to be paid to
the Commissioners at the time of subscribing. In an action brought by
the Company to recover the amount of the calls on the defendant's sub-
scriptions to the stock, HELD :

1st. That the preponderance of authority in favor of a strict compliance with
the provisions of the charter, in cases of subscription *prior to the organiza-
tion of the Company*, is such as is not to be disregarded.

2nd. There is no doubt that, in general, a strict compliance must be shown
with the provisions of the charter, but in some cases a compliance will be
presumed and in others it may be waived.

3d. The distinction between subscriptions prior and subsequent to organiza-
zation is clearly recognized in this State.

4th. In this case, the corporation being organized by the subscription of the
necessary proportion of the stock and election of officers, succeeded to the
powers previously vested in the Commissioners, to sell and dispose of the
remaining shares, without regard to the conditions imposed on them.

5th. The act of the agent taking the subscription being recognized by the
corporation, by receiving and registering the subscription among the con-
ditional subscriptions, was equivalent to a previous appointment of the
agent for that purpose.

6th. A conditional subscription to stock is a continuing offer, which is final
and absolute when accepted.

7th. All contracts for stock made *subsequent* to the formation of the Company,

in consideration of a particular location, when complied with by the Company, will be as binding on both parties as if the contract had been absolute and unconditional.

8th. Non-compliance with the provisions of a charter is not a matter of defence, collaterally, between corporations and their stockholders or debtors.

9th. The modifications of a charter, in enlarging the time of commencing and completing the work, is one of those incidents to all charters which comes within the constitutional power of the State to exercise, and with due notice of which all its citizens must be presumed to contract.

STATUTE OF LIMITATIONS.—Subscriptions to the stock of a rail road company were made on the 28th of April, 1853, conditional upon the adoption by the company of a particular route. This route was adopted by the company on the 31st of March, 1857. No calls were made for the payment of subscriptions until the 25th of June following. In an action by the company to recover the amount of the calls upon the stock subscribed for, HELD :

That the statute of limitations did not begin to run until the several calls were due.

APPEAL from the Superior Court of Baltimore City.

This action was instituted on the 1st day of February, 1861, by the appellee, to recover from the appellant the amount of his subscription to its stock.

By the Act of 1852, ch. 304, certain persons therein named were appointed commissioners to receive subscriptions to the capital stock of "The Baltimore, Carroll and Frederick Rail Road Company."

The capital was fixed at five hundred thousand dollars, in shares of fifty dollars each ; and it was provided that as soon as one thousand shares should be subscribed, the company should be incorporated. It was enacted by the third section, that upon every subscription there should be paid, at the time of subscribing, to the commissioners, or their agents, appointed to receive subscriptions, the sum of one dollar on every share subscribed, and that the residue thereof should be paid in such instalments, and at

such times as might be required by the President and Directors of said company, or a majority of them.

By a supplement, 1853, ch. 37, the title of the company was changed to its present name. At the same session, [1853, ch. 363,] authority was given to extend the said road to Hagerstown. By the Act of 1856, ch. 289, the State expressly waives all causes of forfeiture, by reason of the company's failure to comply with any of the provisions of the Act of incorporation, and allows the period of six years for the commencement, and twelve years for the completion of said road, from the passage of said Act, that is from the 10th of March, 1856. The Acts of 1858, ch. 405 and 420, and 1,860, ch. 20, contain no provision material to any of the questions in this case. They were offered in evidence to show the recognition, by the State, of the appellee, from time to time, as a validly existing corporation.

The appellant made his subscription on the 28th of April, 1853. A condition was annexed to the subscription of the appellant and some other subscribers as follows : "Provided the contemplated road shall be built on the present track of the existing branch to 'Green Spring' of the Baltimore and Susquehanna Rail Road."

The plaintiff offered in evidence a small book, containing the following heading and subscription thereto, viz :

"Baltimore, Carroll and Frederick Rail Road company, capital stock 10,000 shares, at $————, per share.

"We whose names are hereunto subscribed, do promise to pay to the President and Directors of the Baltimore, Carroll and Frederick Rail Road company, the sum of fifty dollars for every share of stock set opposite our respective names, in such manner and proportions, and at such times as shall be determined by the President and

Directors of said company, or a majority of them, in pursuance of an Act of the General Assembly of Maryland, entitled an Act to incorporate the Baltimore, Carroll and Frederick Rail Road company. Witness our hands this 28th day of April, in the year of our Lord one thousand eight hundred and fifty-three.''

And it was admitted by the defendant, that the name of the defendant thereto subscribed, was in his hand writing, and it was also admitted by the plaintiff that the defendant had not, at the time of subscribing or afterwards, paid one dollar for each share so subscribed by him.

The plaintiff further offered in evidence, that the commissioners appointed by the charter, to receive subscriptions to the stock of the plaintiff, after notice duly given as required by the original Acts, opened books, pursuant to such notice, and in conformity with the requirements of said Act, and having received subscriptions for more than 1000 shares, notified the subscribers, in due form, to meet in Westminster, on the 14th of February, 1853. The plaintiff also proved that the subscribers to said stock, did accordingly meet, at the time and place designated, when the commissioners reported that they had received *bona fide* subscriptions for 1086 shares of stock, and the subscribers thereupon proceeded to organize the company, by the election of President and Directors.

It was further offered in evidence by the plaintiff, that the Act of Assembly of 1853, ch. 37, was duly accepted by the plaintiff, but was not so accepted until after the defendant's subscription had been made, and also, that at meetings of the board, and of the stockholders, held on the —— day of ———, reports were made of the persons who had previously to that date subscribed for stock; some were ordinary subscriptions, and the whole number of these (including what had been received by commissioners, before organization) did not exceed 1500 shares, others of

the subscriptions were conditional and these were less than 600 shares.

The subscription of the defendant was taken and received by Wm. Fell Johnson, at Rockland, in Baltimore county, without any public notice having been given, of the time and place of receiving such subscriptions, and no proof was offered of any authority from the company to said Johnson to receive subscriptions ; but it was proved, that J. Henry Huppe who was a director of said company, was authorized to receive additional subscriptions to the capital stock of said company, in Carroll county, and that said Huppe placed books with the proper headings in the hands of several persons, and as one of said persons in the hands of Mr. Green to receive subscriptions in Baltimore county, by whom one of the said books was placed in the hands of the said Wm. Fell Johnson, who received several subscriptions for stock, besides the defendant's subscription, and the said subscription books were shortly afterwards and before the month of November, 1853, returned to and were, and have thenceforth continued in the possession of the said company, and the name of the defendant and the names of said other subscribers, were reported by said Huppe to said company, and were placed on the list of subscribers to its stock on the books of the said company, and there never was any action by said company refusing to recognize them as subscribers to said stock, so far as the said subscriptions were mentioned, and as conditional subscriptions, so far as the same were conditional.

The plaintiff also offered in evidence a paper, and proved that the same was made, as a report by the President of the plaintiff, to the stockholders of said company, on the 16th day of November, 1853, and that the same on that day was accepted and adopted by the said stockholders ; and further proved, that the subscrip-

tion of the defendant was by the said stockholders, and by the President and Directors of said company, considered and counted as a conditional subscription for stock, according to the terms and purport of said subscription of the said defendant ; that the said defendant did not, at any time, give notice to the plaintiff, or to any of its officers or agents, that he had withdrawn, or meant to withdraw or repudiate his said subscription ; that the plaintiff, the company, although the commencement of the construction was unavoidably delayed, never did, by any act, express any intention to abandon the making of said road.

It was also offered in evidence that the " Green Spring" branch of the Baltimore and Susquehanna Rail Road was adopted by the plaintiff, for the route of its road, on the 31st of March, 1857, and that the road was put under contract, on that day, for its construction on that route. It was admitted that no work was done until the summer or fall of 1857. And it was also admitted that the road was actually built on the track of the branch to " Green Spring," on the Baltimore and Susquehanna Rail Road, as the same existed on the 28th of April, 1853.

It was conceded by the plaintiff, that (except a mere reconnoissance of the route) nothing was done in the execution of the work, until the summer of 1857. It was also proved that no calls were made for payment of subscriptions until the 25th of June, 1857, when the first call was made, payable at the time mentioned in the declaration, others were made from time to time afterwards, as stated in the declaration, and due and proper notice was given of the several calls so made.

Evidence was offered on the part of the defendant that he had never been present at any meeting of the stockholders of the plaintiff, or of the subscribers to its stock.

The plaintiff then offered the three following prayers :

The plaintiff, by its counsel, prays the Court to instruct the jury :

1st. That if they shall find from the evidence that the Act of 1853, ch. 37, was duly passed and was duly accepted by the plaintiff, then the change of the corporate name cannot be relied on by the defendant, as a bar to the present suit.

2nd. Even if the jury shall find the facts set forth, as the hypothesis of the defendant's first prayer, but shall also find from the evidence, that said subscription was made in a subscription book, then in the hands of William Fell Johnson, and that said book had been previously placed in the hands of said Johnson by J. Henry Huppe, and that said Huppe, at the time he so placed said book in the hands of said Johnson, was one of the Directors of said company, and that he was authorized by said company to receive subscriptions to said stock, and that as a mode of receiving subscriptions he placed said book in the hands of said Johnson, and that for the same purpose he placed similar books in the hands of other persons at the same time; and shall further find, that shortly afterwards and before the month of November, 1853, said books were returned to the said Huppe, by said Johnson, and by the other persons respectively, and were by said Huppe reported to, and accepted by the President and Directors of said company as subscriptions to the capital stock of said company, so far as any of said subscriptions were unconditional, and as conditional subscriptions so far as any of said subscriptions were conditional; and shall further find, that on the 16th of November, 1853, the paper which has been offered in evidence as a report of the President of said company, to the stockholders of said company, was in fact made to the stockholders of the said company, by the President of said company, and that said report was accepted and adopted by the said stockholders; and shall further find, that the President and Directors of the said company, and the stockholders of the said com-

pany, at the meeting of the said stockholders, held on the 16th of November, 1853, (in case the jury shall find that such meeting was held on said day, and that a report was made as aforesaid, and accepted as aforesaid) counted and considered the subscription of the defendant as a conditional subscription, according to the terms and purport thereof; and shall further find, from the evidence in the case, that the defendant never, at any time, gave notice to the said company, or any of its agents or officers that he withdrew his said subscription; and shall further find from the evidence in the cause that afterwards, on the 31st of March, 1857, the said company definitely adopted the "Green Spring" route, and on that day made the contract with Messrs. Irwin & Taylor, which has been offered in evidence, and shall also find that the agreement offered in evidence by the plaintiff was made by the said company with the Northern Central Railway company, on the 23d day of February, 1857, and shall further find that the road of the plaintiff was actually built on the track of the branch to "Green Spring," of the Baltimore and Susquehanna company, as it existed on the 28th of April, 1853, then the non-payment by the defendant of $1 per share, at the time of subscribing as aforesaid, in case such non-payment and subscription be found, is not of itself a bar to the present suit.

3rd. Even if the jury shall find from the evidence, that the road of the plaintiff was not commenced, in three years from the passage of the Act of 1852, ch. 304, but shall also find that the plaintiff never abandoned the intention of making said road; and shall further find that the Act of 1856, ch. 289, offered in evidence, was duly passed, and was duly accepted by the stockholders of the plaintiff, then the fact of such omissions to commence said road, if found by the jury, cannot avail the defendant as a bar to this suit.

And the defendant offered the three following prayers :

1st. If the jury find from the evidence that the plaintiff was organized as a corporation in the month of February, 1853, and that the defendant made the subscription offered in evidence by the plaintiff, on the 28th day of April, 1853, and that said subscription was taken and obtained at Rockland, in Baltimore county, by William Fell Johnson, and that said Johnson then had the possession and control of the book, in which such subscription was made, and that there was not paid at the time of subscribing or afterwards by the defendant, the sum of one dollar on each share subscribed, and shall further find that no book for receiving subscriptions was opened at any specified time or place at Rockland aforesaid, and that no notice was published of the time and place of opening books at Rockland, and that less than 1500 shares of the stock of the company, had been subscribed for at the time of the defendant's subscription, then the plaintiff is not entitled to recover.

2nd. If the jury shall find the facts stated in the first prayer, and shall also find that the road of the plaintiff was not commenced in three years from the passage of the Act of Assembly of Maryland, entitled an Act to incorporate the Baltimore, Carroll and Frederick Rail Road company, passed at the session of the Legislature of 1852, ch. 304, and that the President and Directors of the plaintiff did not make any call for the payment of any part of the money subscribed by the defendant until the 25th day of June, 1857, that then the plaintiff is not entitled to recover.

3rd. If the jury find from the evidence, that the defendant made the subscription offered in evidence by the plaintiff, and that there was not paid by him at the time of subscribing or afterwards, one dollar per share for each share of stock subscribed, then the plaintiff is not entitled to recover.

The first prayer of the plaintiff was conceded by the defendant, and the Court, MARTIN, J., granted the second and third prayers of the plaintiff, and rejected all the prayers of the defendant, and from this action of the Court this appeal is taken.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH and COCHRAN, J.

*I. Nevett Steele* for the appellant.

1st. It is contended in behalf of the appellant, that his subscription to the stock of the appellee was invalid and not obligatory, because he was not required to pay, and did not pay, one dollar per share at the time of subscribing in conformity with the provisions of the appellee's charter. *Act* 1852, *ch.* 204, *sec.* 3. *Union Turnpike vs. Jenkins,* 1 *Caine's Cases,* 86, 93, *and* 94. *Highland Turnpike vs. Mc-Kean,* 11 *John.,* 98. *Crooker vs. Crane,* 21 *Wend.,* 218, 220, *and* 221. *Hibernia Turnpike vs. Henderson,* 8 *Serg. & Rawle,* 219, 222, 223, 225, *and* 227. 13 *Idem,* 252. *Massie vs. Poe,* 12 *Georgia,* 182, 184. *Angell & Ames on Corp.,* secs. 527 *and* 529. *Penn. Nav. Co. vs. Dandridge,* 8 *G. & J.,* 248. *Maltby vs. R. R. Co.,* 15 *Md. Rep.,* 422. *Elysville Manf. Co. vs. Okisko Co.,* 5 *Md. Rep.,* 152, 158.

Where the charter of a company requires, that a certain amount shall be paid at the time of subscribing to its stock, it is to be presumed that such a peremptory requirement was inserted by the Legislature for some sufficient reason ; and when a subscription is made to the stock of such company without the specified payment, the transaction is upon its face a palpable violation of the charter, and therefore ought not to be sustained by the Courts.

It is contended for the appellee that whatever may be the rule as to subscriptions received by commissioners, the company had a right, after one thousand shares had been

Taggart vs. Western Maryland R. R. Co.

subscribed and its organization effected, to dispose of the remaining nine thousand shares as it thought proper. If by this it is meant, that the company could sell this stock in any manner and at any price it pleased, the proposition is denied. No authority for such action is conferred by the charter, and to admit one stockholder at the price and on the terms fixed by the charter, and another at a different price and on different terms, would be a violation of that perfect equality among the stockholders which is a fundamental principle in this and all similar acts of incorporation. But if it is only meant, that the company could dispose of the untaken stock, by receiving subscriptions therefor, as was done in the case in 31 *Penn. State Rep.*, cited on the other side, then even if the proposition be correct, still the company in taking *subscriptions* was as much bound as the commissioners, to observe the terms on which alone subscriptions are authorized to be received by the charter.

2d. That the Court below erred in rejecting the first prayer of the appellant, because the said subscription was taken and received by Johnson without authority from the appellee, and without conforming to any of the requirements of its charter, and was therefore not binding; and because the said subscription was *conditional*, and therefore invalid as against public policy and for want of mutuality, or if not absolutely invalid, it could only have effect as a proposition to subscribe, and would only become obligatory, by its acceptance on the part of the appellee within a reasonable time, and in this case there was no such acceptance. *Act of* 1852, *ch.* 304, *secs.* 1, 3, 13, 20. *Troy & B. R. R. Co. vs. Tibbetts*, 18 *Barb.*, 297, 306, 310. *Charlotte & S. C. R. R. vs. Blakely*, 3 *Strob.*, 245. *Macedora Plank R. vs. Lepham*, 18 *Barb.*, 312. *Idem vs. Snediker*, *Id.*, 319. *Butternuts Turnpike vs. North*, 1 *Hill*, 518.

*Crawford R. vs. Lacey,* 3 *Younge & Jervis,* 80. *Brinkerhoff vs. Utica R. R.,* 21 *Wend.,* 139. 1 *Parson's on Contracts, (last edition,)* 481, 482, 483. *Beckwith vs. Chever,* 1 *Foster,* 41. *Peru vs. Turner,* 1 *Fairfield,* (10 *Maine,*) 185. *Angell & Ames on Corp.,* 747, 748.

Not only was the subscription unauthorized because of its conditional form, but it was taken and received by one who had no authority whatever from the company to receive it. The company authorized Mr. Huppe to receive subscriptions in Carroll County, and Mr. Huppe gave Mr. Johnson a book to take subscriptions in Baltimore County. When therefore Mr. Johnson received the appellant's subscription in Baltimore County, manifestly the company was not bound by his act, as he was in no sense their agent, and the company not being bound, the appellant was not bound, and the transaction was a nullity. To this it is replied, that the act of Mr. Johnson was subsequently adopted and ratified, by the company, because the subscription was "by the stockholders and by the President and Directors of the company considered and counted as a conditional subscription for stock." It is submitted that this "considering and counting" stops short of amounting to a binding adoption by the company of Mr. Johnson's act ; and besides, this was a private matter, unknown to the appellant, which the company might bring to light or not, as its interests dictated.

The condition annexed to the subscription of the appellant was as follows : "Provided the contemplated road shall be built on the present track of the existing branch to ' Green Spring,' of the Baltimore and Susquehanna Railroad." Such a subscription did not take stock, or make the subscriber a stockholder, but was merely a proposition, an offer to take stock upon the terms specified, if the company would agree to and accept them. When a contract or bargain is proposed by one party to another, it does not

become a contract or bargain, until that other has accepted the proposition. This acceptance must be communicated within the time limited by the proposal, if it contains such a limitation, and if there be no time fixed, the acceptance must be made in a reasonable time. 1 *Parsons on Contracts,* 481, 482, *and* 483. Here the subscription was made early in the year 1853 ; the Act of 1852, ch. 304, by its 26th section, peremptorily provided that the road should be commenced in three years from the date of its passage in 1852, and if not so commenced that "then this Act shall be null and void ;" the road in fact was not commenced until some time in 1857, under what was substantially a new charter ; calls were not made until 1857 upon stockholders to pay instalments, and then they were published in the newspapers, but no notice was given to the appellant that the company had accepted his proposition, and that he was considered a stockholder ; nor is there any evidence in the record that at any time or in any way the company had notified the appellant of its acceptance of his proposition.

3rd. That the appellee having been chartered in 1852, with a provision in its charter that the road should be commenced in three years from the passage of the Act, never having commenced its road or made calls for payment of stock subscriptions until 1857, was then by its long delay barred from making such calls, and was presumed in law to have abandoned the constructing of its road, and therefore the Court below was wrong in rejecting the 2nd prayer of the appellant, and granting the 3rd prayer of the appellee. *Codman vs. Rogers,* 10 *Pick.,* 112. *Laforge vs. Jayne,* 9 *Barr.,* 410. *Pittsburgh & C. R. R. vs. Byers,* 32 *Penn. State Rep.,* 22.

A subscription to stock is not the case of a simple debt due by the subscriber, but is a contract by which the subscriber agrees to pay, and the company undertakes to make

the calls and deliver the stock. The terms of the contract are to be found in the subscription paper and the charter to which it refers ; and the object of the contract is to carry the charter into effect. We are then to look to the contract, here as in other cases, to ascertain not only the acts which each party is to do, but also the time at which they are to be done ; and if the terms of the contract do not expressly or by construction fix the time, then resort must be had to the common law doctrine of a reasonable time.

In this case the subscriber undertakes "to pay fifty dollars, &c. in such manner and proportions, and at such times, as shall be determined by the President and Directors of said company or a majority of them, *in pursuance of an Act of the General Assembly of Maryland*, entitled, an Act to incorporate," &c.

The subscription is thus made with express reference to the charter, and the right to make calls is to make them in pursuance of the charter. As has already been stated, it was provided by the 26th section of the Act of incorporation, that if the road was not commenced in three years from the date of its passage, the Act should be "null and void ;" and the road was not commenced within the three years. It is said on the other side, that this was cause of forfeiture merely, and that as the forfeiture was never judicially declared at the instance of the State, the company continued to exist. Without impugning the correctness of the general principle thus asserted, its application to this case is denied.

It is not proposed to argue this question fully, because it is not deemed vital to the appellant's case. The Court will find the authorities which bear upon it collected and referred to in *Angell & Ames on Corp.*, secs. 542, 537, 538, *and* 539.

4th. Without reference to the time at which the calls

were made, the contract now sought to be enforced is not the contract into which the appellant entered. His answer to the action is, *non in hæc fœdera veni.* A contract to take stock in a road to be commenced in three years from 1852, does not bind him to take stock in a road to be commenced in six years from 1856. The subscription was made on the basis of the rights and duties set forth in the charter, as are all such subscriptions, and it would be a fraud on the appellant for the company to procure an alteration of its charter, and still insist on his coming in as a stockholder. At law, time is of the essence of the contract, and in the particular case, the provision that the road was to be speedily commenced, might well induce subscriptions. In the opinion of Judge NELSON, already referred to, it was held that the subscriber was discharged on this ground. Even a stockholder, who is ordinarily bound by the action of a majority of the stockholders, is not bound if they accept a fundamental change of their charter without his assent. But here the appellant was not a stockholder. He was not even a subscriber, in the ordinary sense of the term. He had made an offer to take stock, upon terms which had not been accepted; or, to adopt the view of the appellee, he was a conditional subscriber, and the condition had not been fulfilled at the time of the acceptance of the Act of 1856. He was therefore not then a stockholder, and was in no respect bound by the Company's action.

*Wm. Schley* for the appellee, argued:

1st. That the subscription made by the defendant, although made in a book then in the possession of Mr. Johnson, was, upon the proof given, a valid subscription, and binding on the defendant. When accepted by the appellee, it became a contract.

The company was organized, and a President and Directors were elected on the 14th of February, 1853, prior

37    v. 24

HARVARD LAW SCHOOL LIBRARY.

to defendant's subscription. The subscription, therefore, was made after the appellee had become an existing corporate body, although before the formal acceptance of the supplement, by which its name was changed. Even if, in case of a subscription, made whilst the commissioners were acting, it would be a good exception, (which, however, is not admitted;) the subscription was not received, after notice given, and at the time and place designated in such notice; yet, when the corporation had been ushered into existence, the commissioners were *functi officio.* They had fulfilled the commission with which they had been entrusted by the State. *Wellersburg and West Newton Plank Road Co. vs. Hoffman,* 9 *Md. Rep.*, 560, 569.

The corporation itself, thus having existence and capacity to contract, could receive a subscription, at any time, at any place, without notice, and through any agency, or *per directum,* for any untaken stock. The subscription of the appellant, when accepted by the company, imposed a common law liability, not a mere statutory obligation. *Rail Road Co. vs. Rodriguez,* 10 *Rich. S. C. Law Rep.*, 278. *Maltby vs. Northwestern R. R. Co.*, 16 *Md. Rep.*, 425, 426, 430, 445.

In cases where a part of the authorized stock is untaken, the corporation, after organization, may validly dispose of such stock. *Reese vs. Bank of Montgomery,* 31 *Penn. Rep.*, 78.

2nd. The non-payment of one dollar, at the time of the subscription, was not of the essence of the contract. It was not, as between the parties to the contract, an indispensable condition. The subscription, so far as the appellant is concerned, was complete and perfect when he subscribed for the shares, and when his subscription was accepted by the company. It was his own default that he did not pay the instalment, if it was his statutory duty so to pay, at the moment of subscribing. It was competent, however, for

the company, in any view that may be taken, to waive the immediate payment, and to rely upon the efficacy of its future calls.

Even if this subscription had been received by the commissioners, the non-payment of one dollar per share, at the time of subscribing, would not have rendered the subscription a nullity. The language of the Act is directory, not imperative. It is not made a condition precedent to the perfecting of the subscription.

It is not an integral, elementary, constituent part of the subscription; but, in consequence of the subscription, the Act made it the duty of the subscribers to pay, and if the commissioners chose to waive it, they surely could do so, at their own risk. The company could not be affected by their omission to exact the payment. Indeed, the commissioners would be accountable for the money in the same manner as if actually received.

The following cases are authorities on this point: 2 *American Railway Cases*, 226, *and notes. Vermont C. C. R. R. Co. vs. Clayes*, 21 *Vermont*, 30. *Wight vs. R. R. Co.*, 16 *B. Monroe*, 5. *Judah vs. Life Ins. Co.*, 4 *Indiana*, 337, 338. *Ill. Riv. R. R. Co. vs. Zimmer, &c.*, 20 *Ill.*, 654. *Eastern Plank Road Co. vs. Vaughan*, 20 *Barbour*, 155. *R. W. Plank Road Co. vs. Wetsel*, 21 *Barbour*, 56. *Abbott vs. Aspinwall*, 26 *Barbour*, 202. *V. R. R. Co. vs. McKean*, 12 *Louisiana Rep.*, 638. *R. R. Co. vs. Chandler*, 13 *Metcalf*, 311. *Chaffin vs. Cummings*, 37 *Maine*, 76. *Henry et al. vs. R. R. Co.*, 17 *Ohio*, 187. *Pierce on American Rail Road Law*, 64.

In some of the cases awaiting the decision of this case, this question is involved, otherwise it would not have been considered. For, in this case, the subscription was not received by the commissioners, but by the company after organization. The provisions of the Act in relation to the payment of one dollar per share, whether directory or es-

sential, were intended to apply to subscriptions received by the commissioners. They were not intended as a limitation upon the powers of the corporation, when it should come into being. In the second section of the Act, it is said that the corporation "shall have, enjoy, and may exercise all the powers, rights and privileges, which other corporations may lawfully do, for the purposes mentioned in this Act."

The question then arises, whether the corporation could dispose of its untaken stock. Now, the capital was fixed at five hundred thousand dollars, in shares of fifty dollars each, that is, ten thousand shares. On the subscription of one thousand and eighty-six shares, however, it was organized; leaving nearly nine-tenths of the stock untaken. In fixing the capital at the designated amount, the Legislature assumed that the cost of the road would require, at least, that amount of capital; and the 13th section contemplates the possibility of the necessity of *double* the amount of capital. Now, who is to dispose of the untaken stock? Not the commissioners; for, after calling together the subscribers, and laying before them their books of subscription, they had fulfilled their duty; they were "*functi officio.*" *Plank Road vs. Hoffman,* 9 *Md. Rep.,* 569.

The power to dispose of the untaken stock was within the general powers of the corporation. The capital of the company when organized, the provided means for constructing the road, consisted, in part, of the untaken shares: and of which shares the corporation had, of necessity, the *jus dispodendi,* as owner thereof. It could use those shares, instead of money, in purchasing the right of way, in the construction of the road, or in disposing of them at par for money. *Mann vs. Cooke,* 20 *Conn. Rep.,* 178. *S. C. 2d American Railway Cases,* 124. *Reese vs. Bank of Montgomery,* 31 *Pa. State Rep.,* 78. *Rail Road*

*Co. vs. Rodriguez*, 10 *Rich. S. C. Law Rep.*, 278. *Plank Road Co. vs. Hoffman*, 9 *Md. Rep.*, 559. *Maltby vs. N. W. Va. R. R. Co.*, 16 *Md. Rep.*, 422.

If, then, the company could dispose of its stock, the transaction was essentially a common law contract, made between competent parties. It was not necessary to fix a time and place for making the contract, or to give public notice thereof, or to require a cash payment, as a condition precedent to the making and perfection of the contract.

Recent decisions place corporations, when acting within the scope of their powers, very much in the condition of natural persons, both in relation to torts and to contracts. A corporation may commit an assault and battery, may act maliciously, and be guilty of publishing a libel; and may commit a fraud, and may be bound by estoppels *in pais*. Within the scope of its granted powers, and for the purposes of its incorporation, it may make any contract, not illegal or immoral; and there can be no pretence of want of mutuality in a contract made by a corporation, where both parties may legally and validly perform their reciprocal engagements. The objection that a contract is without mutuality is very different from the objection that a contract by a corporation is *ultra vires*. The case of *The Pa. Steam Navigation Co. vs. Dandridge*, 8 *G. & J.*, 248, is of the latter description. But the test of want of mutuality is properly stated in 2 *Williams' Saunders*, (note *i*,) to be, where one party is left without a valid consideration for his promises. To the same effect are *Laythorp vs. Bryant*, 29 *Eng. C. L. Rep.*, 472. *Morton vs. Burn*, 34 *Eng. C. L. Rep.*, 21, 22. *L'Amoreux vs. Gould*, 3 *Selden*, 349. *R. R. Co. vs. Mason*, 2 *Smith*, (16 *N. Y.*,) 451.

3rd. Was the defendant's subscription void because it was made conditional as to the route of the road? There are cases in which such conditions are discouraged, and others in which they are denounced as against public

policy. But the company is authorized to select the route between the *termini;* and the presumption always is, that the best route will be selected. It is frequently a matter of controversy between localities, as to the most eligible route; and persons residing in a particular neighborhood, may favor the enterprize if the route is to pass through or near it; but may not be willing to subscribe at all, if the road should be differently located. A party, therefore, may be willing to subscribe conditionally, that is to say, if the road shall be located upon a particular route, and the company may validly accept it. And (if the subscription remaining unrevoked,) the designated route is selected, then the subscription becomes absolute.

How is this against public policy? The sovereign power has committed to the corporation the selection of the route for the road; and the terms of subscription are not inconsistent with the honest and faithful exercise of this power. I shall leave the point, referring to the following authorities: *Pierce on Rail Road Law*, 71. *L'Amoureux vs. Gould*, 3rd *Selden*, 349. *McMillan vs. Maysville and Lexington Rail Road Company*, 15th *B. Monroe*, 218. *Henderson and Nashville Rail Road, vs. Seavell*, 16th *B. Monroe*, 358. *Cumberland Valley Rail Road Company vs. Baab*, 9th *Watts*, 458. *Rhey vs. The Ebensberg and Susquehanna Plank Road Company*, 27th *Pennsylvania State Reports*, 261.

4th. Was there a forfeiture by the corporation of its chartered rights, by reason of its failure to commence the road within the period of three years from the passage of the Act of 1852?

It is conceded that the language of the 26th section of the Act of 1852, ch. 304, is very peremptory, and is unambiguous; and it is also conceded that the reconnoissance for the purpose of deciding the route, was

not such a commencement of the road, within three years, as was required by said 26th section. But it must not be forgotten, that this is the language of a sovereign in a grant of corporate powers ; and it is in the nature of a condition subsequent. If it were a case of a condition precedent, the case would be essentially different. It is a clause of forfeiture, and must operate, if at all, in defeasance of vested rights. But, unless and until the sovereign shall take advantage of the forfeiture, the granted rights continue.

Individuals cannot enforce the forfeiture ; and the sovereign power may not choose to do so, but, on the contrary, may waive the forfeiture. In this particular case, the sovereign not only did not claim the forfeiture for condition broken ; but, by the Act of 1856, ch. 289, confirmed the company in its chartered rights, "as though said 26th section had not been a part of said original Act." This doctrine is very clearly and ably elucidated in the case of the *Canal Company vs. The Baltimore & Ohio Rail Road Company, in 4th Gill and Johnson,* 121 to 129 ; and the applicability of that authority to this case will more plainly appear by comparing the 18th section of the Act of 1784, ch. 33, with the 26th section of the Act of 1852, ch. 304. The Court is also referred to the following cases : *Planters' Bank vs. The Bank of Alexandria, 10th Gill and Johnson,* 356. *Frederick Female Seminary vs. the State, 9th Gill's Rep.,* 404. See also the Act of 1832, ch. 306.

Since the Constitution of 1852, however, the end proposed by the Act of 1832, might have been obtained, simply, by a repeal of the Act of 1852. (Constitution of 1832, Article 3, section 47.)

But not only was the Act not repealed, but by the Act of 1856, as we have seen, the forfeiture was expressly waived. See also, for illustration : *Comyn's Landlord and Tenant,* (6th Law Lib.) *Reid vs. Parsons, 2nd Chit-*

*ty's Rep.*, 247.    (18*th English Common Law Rep.*; 322.)
*Webster vs. Hooper*, 14*th Howard's Rep.*, 501.

The moment it is remembered that the only parties to
the grant are the State and the Corporation, it will be·
manifest that no third party could enforce what the State
alone could enforce, and was competent to waive.    *Abbott
vs. Aspinwall*, 26*th Barbour's Rep.*, 202.

5th.  Did the plaintiff, by the delay in commencing the
road, and in making the calls for the instalments, dis-
charge the defendant from liability on his subscription ?
The proposition, affirmed by the defendant's second
prayer, is this : that as more than three years had
elapsed from the passage of the Act of 1852, and as no
calls were made by the plaintiff for any part of his sub-
scription until the 28th of June, 1857, the plaintiff was
not entitled to recover.   In the printed brief of the appel-
lant these facts are relied on, as creating a " presumption
in law," that the corporation had abandoned the construc-
tion of its road.

The presumption thus claimed by the defendant, is not
one of fact but of law.   It did not refer to the *onus pro-
pandi ;* for there was uncontradicted proof, that, although
the commencement of the road was unavoidably delayed,
the company never did, by any act, express any intention
to abandon the making of the road.   But the objection
goes· to the very cause of action ; to the right to recover.

Whatever may be the law elsewhere, the lapse of time,
in Maryland, in case of a suit at law upon a contract, goes
to the remedy, not to the right ; and as to the remedy,
the length of time, that will bar recovery, is fixed by
the statute of limitations.

Bowie, C. J., delivered the opinion of this Court.

The General Assembly, at January session, 1852, incor-
porated "The Baltimore, Carroll and Frederick Rail Road

Company," with a clause prescribing certain preliminaries usually observed in opening the books and taking subscriptions for stock, prior to the organization of a company, among others, the pre-payment of one dollar per share on every share subscribed ; also requiring the road therein contemplated, to be commenced within three years and finished within ten years from the passage of the Act, otherwise the same should be null and void. Books were opened by the Commissioners, the requisite number of shares subscribed, a Board of Directors and a President were elected, and the company fully organized.

After this organization, the appellant on the 28th April, 1853, subscribed for ten shares, in one of the subscription books, held by a Mr. Johnson, upon *the terms and conditions prescribed therein* and the charter, with this condition annexed : "provided the said contemplated road should be built on the then present track of the then existing branch to 'Green Spring,' of the Baltimore and Susquehanna Rail Road ;" but did not pay the sum of one dollar per share, required by the charter to be paid to the commissioners, at the time of subscribing.

The name of the corporation was subsequently changed by Act of Assembly, to that of "The Western Maryland Rail Road Company." The defendant's subscription, with others, was returned to the stockholders, and classified among the conditional subscriptions. The construction of the road not having been commenced within the time prescribed by the original charter, the Act of 1856, ch. 289, was passed, waiving all claims of forfeiture, by reason of the company's failure to comply with any of the provisions of the Act of incorporation, and allowing six years for the commencement, and twelve years from the passage of the Act, for the completion of the road.

The "Green Spring" branch of the Baltimore & Susquehanna Rail Road was adopted by the appellee on the 31st

of March, 1857, and the road put under contract for construction. No calls were made for payment of subscriptions until the 25th of June, 1857. The appellee never indicated, affirmatively, any intention of abandoning the work of the appellant; never affirmatively withdrew his subscription, or attended any meeting of the stockholders or subscribers to the stock.

Several calls for instalments having been made and refused, this action was brought on the 1st of February, 1861. The prayers offered by the plaintiff, (now appellee,) and granted by the Court, present three negative propositions:

1st. That the change in the corporate name of the appellee by the Act of 1853, ch. 37, is not a bar to the present action.

2d. That upon the finding of the facts therein before specified, the non-payment of one dollar per share by the defendant, at the time of his supposed subscription, *is not of itself a bar* to the present action.

3d. That the failure to commence the work within three years from the Act of incorporation, (1852, ch. 304,) the Act of 1856, ch. 289, being duly passed and accepted by the stockholders of the plaintiff, is not a bar to this suit.

The first proposition is admitted, but the second and third propositions are specially denied by the prayers of the defendant, which were rejected by the Court, and constitute the ground of this appeal.

The first and third prayers of the appellant are the converse of the appellee's second; the appellant's second prayer, of the appellee's third.

The learned counsel differ as to the range of the first and third prayers. The appellee contends, they present only the question of the effect of the non-payment of the cash instalment of one dollar at the time of subscribing; on the other hand, it is insisted they embrace the condi-

tional character of the subscription, and the validity of such. It is observable that these prayers refer specifically to the subscription, in the following terms: "and that *the defendant made the subscription offered in evidence by the plaintiff,"* etc., as one of the facts upon which the proposition of the defendant was based. This specific reference in each of the prayers under consideration, was not merely introductory to the other facts connected with it, but called for an examination of the subscription itself, its character and conditions.

The subscription of the appellant is not set out in terms in the bill of exceptions, but referred to as a conditional subscription. In the *nar* and appellee's brief, it is set out " *in totidem verbis,"* as therein before cited.

Assuming that the evidence, offered by the plaintiff (and refused to the defendant in his prayer,) corresponded with the subscription set out in the *nar*, the legal sufficiency of such subscription, was necessarily brought before the Court, by the first and third prayers of the defendant, whether the right of action depended on the prepayment of the deposit, or the conditional character of the subscription itself. The supposed contract being in writing, its validity was a question for the Court, and however the latter view may have been overlooked in the discussion of the former, it seems necessarily involved in the disposal of these prayers.

The first point presented by the prayers arises under the 3rd section of the Act of 1852, ch. 304, incorporating the appellee, which directs that "upon every subscription, there shall be paid at the time of subscribing, to the company or their agents, appointed to receive such subscription, the sum of one dollar on every share subscribed." As there are other cases involving the construction of this section, we are requested to interpret it, not only as it may operate upon the facts in this case, but upon subscrip-

tions made to commissioners or their agents, prior to the organization of the company. It is contended that this clause applies peculiarly and solely to the latter class of subscriptions, as to which, it is only directory and not indispensable. The class of cases maintaining the contrary, it is insisted, originated in the decision of the case of *Jenkins vs. The Union Turnpike Company*, by the Court of Errors in New York, 1 *Carr's Cases in Error*, 86, which was contrary to the better opinion (as it said) of the Supreme Court of New York, and make only a "*suite d'erreurs.*" The defect or vice of the original decision is not pointed out, but it is impeached as emanating from a Court, constituted of laymen, as well as lawyers, and of less authority than the tribunal whose decision it reviewed and reversed. A decision not universally adopted, but questioned, doubted and overruled. We are invoked not to follow such precedents, upon a mere comparison of facts, but to apply the judicial mind to a consideration of the principles of law applicable to them. With this earnest exhortation in view, we have examined the series of cases referred to, and will concisely state the result.

The controlling principle, on which those cases are founded is, that all charters or Acts under which highways are erected, and franchise and privileges conferred, are deputations of public power or authority to be strictly construed. The subscription for stock must be founded on a valid consideration, and constitute a contract binding on both parties "*eo instanti.*" The promise of the subscriber being based on the promise or expectation of becoming a stockholder, if the right to the stock is not consummated by payment of the deposit, the obligation to pay the subscription is not binding.

Chancellor LANSING, treating the Act, under which the subscription was made in that case as a public law, the provisions of which he must notice officially whether

pleaded or not, thus defines the duties of the commissioners : From the record it appears, that commissioners were appointed by the statute, to perform certain duties particularly described. They were to receive subscriptions and to receive for the benefit of the defendants (in error) $10 on each share of the stock of their company. The plaintiff (in error) subscribed, but it does not appear that he paid. At the time these steps were taken, the corporation described in the Act, was not in existence. It was incapable of contracting. The acts to be performed by the commissioners were merely preparatory to its creation. To give effect to their acts, their power must be strictly pursued. * * They were directed to exact from the persons who were to be admitted members of the corporation, both subscription and payment, as a condition precedent to their admission. If they omitted either to subscribe or to pay, they did not come within the terms of admission. 1 *Caine's Cases in Error*, 94.

TILGHMAN, C. J., in the case of *The Hibernia Turnpike Company vs. Henderson*, 8 *Serg. & Rawle*, (which was a subscription to commissioners before the organization of the corporation,) enlarged upon the principles of public policy, which required a rigid adherence to the letter of the law, and strict compliance with the requisition of prepayment, in all subscriptions made to commissioners. "If (he says) persons are permitted to subscribe without the previous payment of five dollars a share, large subscriptions may be made, which would not otherwise have been made, by those who are anxious to give a direction to the road, which may benefit themselves, at the expense of the public. The case is reduced to this simple question : Can a contract be enforced in a Court of Justice, which was made in violation of an Act of Assembly. It is not the first time the question has been asked in this Court, and it has received but one answer : "It cannot be enforced." He refers to the decision of the

Court of Errors in New York, 1 *Caine's Cases in Error*, as settling the law in that State.

GIBSON, J., concurred, replying to the argument (which has been urged in this case,) that prepayment was a condition which might be waived, it being intended only for the benefit of the corporation. He asks, " What was the consideration for the charter? Undoubtedly, the benefit which was expected to result to the public ; not the profit that might be made by the stockholders. The State, therefore, was a party, and had an interest in preventing the scheme from being turned into a bubble, etc., *vide* p. 225. The design of the deposit was to prevent the subscription list from being filled with the names of nominal stockholders and the creatures of others." 226. * * *.

Every contract, where the consideration is promise for promise, must be obligatory on both parties or both will be at liberty to recede—the promise which is the consideration of that on which the action is brought, must be such as the plaintiff had power to perform. I do not say there was an express promise here that the defendant should enjoy the rights and privileges of a corporator ; but certainly that was understood as being the consideration on which he subscribed. But the company could introduce no one as a member in any other way than that pointed out by the Act of incorporation, p. 227 ; if they could, it would be requisite that the defendant's title should have been good when he subscribed ; otherwise the contract would be without mutuality, and if he acquired no right which he could enforce against the will of the plaintiffs, he incurred no responsibility, 228.

In *Crooke vs. Crane*, 21 *Wend.*, the question being whether the commissioners, appointed to open books to receive subscriptions, were authorized to receive checks of subscribers in payment of the sum required to be paid at the time of subscription.

COWEN, J., said: "I am, therefore, strongly inclined to the opinion that the check in question was void, as contrary to the policy of the statute. Nor can there be any doubt, I imagine, that the contemplated corporation, if I am right as to the facts, failed of going into existence for want of the proper payments as a *condition precedent.* Such is the doctrine laid down by Chancellor LANSING in *Jenkins vs. Union Turnpike Company,* 1 *Caine's Cases in Error,* 934, and recognized by this Court in *Goshen Turnpike Company vs. Horton,* 9 *Johns. Rep.,* 217, *and Highland Turnpike Company vs. McKean,* 11 *Johns. Rep.,* 98. *Dutchess Cotton Manuf'y. vs. Davis,* 14 *Johns. Rep.,* 238.

These cases go further, each subscriber must pay as a condition to his own liability attaching. Payment was a requisite which the commissioners could· not waive. *Starr vs. Scott,* 8 *Conn. Rep.,* 483.

The case in 21 *Vt. Rep.,* cited by the appellee, to the contrary, has several peculiar features which distinguish it from the class of cases requiring prepayment of the deposit, as essential to the contract. The defendant, in that case, was one of the original associators, and had signed an instrument prior to the Act of incorporation, by which the subscribers agreed to take, and did take the number of shares affixed to their respective names. The defendant subscribed for fifty shares of the stock. The note in question was given for the first five dollars payable on each respective share, which was received in settlement of the first instalment ; by the subscription paper it appears there were several subscribers for stock prior to the defendant, and by the Act of incorporation each subscriber *per se* became a corporator.

These facts were deemed sufficient to show the corporation was " in *esse* at the time of taking the note, and capable of taking the promise through their agents, the commissioners." Upon all these peculiar circumstances, it was held the action on the note was maintainable.

The learned Judge delivering the opinion of the Court, though questioning whether the opinion of the Supreme Court or Court of Errors, in the case in 1 *Caine's Cases in Error*, was the better opinion, distinguishes that case from the one under his consideration.

The case in 16 *B. Monroe*, 5, declaring prepayment of the deposit to the commissioners, is not essential to the validity of the subscription, presents the anomaly of a decision founded on a case previously and notoriously reversed, without apparent knowlege of the reversal. The Judge in delivering the opinion says : " The decision of the Court in the case of *The Union Turnpike Company vs. Jenkins*, 1 *Caine's Rep.*, sustains the views expressed in this opinion ; and it is only the opinion of the dissenting Judge that is cited in *Angell & Ames on Corporations*, and referred to by the counsel for the appellants." He seems wholly unaware that the opinion of the dissenting Judge had been affirmed by the Court of Errors, and that of the majority of the Supreme Court on which he relied, overruled.

The 20*th Ill.*, 656, deciding in the same way, relies only on 16 *B. Monroe*, 5, *and* 21 *Vt. Rep.*, 30, which we have before shown, was marked by very peculiar features, distinguishing it from the *Union Turnpike Co. vs. Jenkins*, and therefore not in point.

The case in 17th *Ohio*, 191, cited to the same point by the appellee, is a mere dictum, sustained by neither authority or reason.

It would appear from this comparison of the cases cited, that *Jenkins vs. The Union Turnpike Company*, 1 *Caine's Cases in Error*, has not been overruled, or abandoned in principle in succeeding cases within the same category ; but it has been questioned, criticised and departed from, where the facts would warrant a departure.

It is still recognized as a leading case, not only in the

State of New York, but in several other States, with such weight of authority and reason as commands our respect in similar cases.

If not expressly adopted in this State, it has been referred to in terms which recognized the principles on which it was decided as properly applied under the circumstances.

In the case of *Elysville Manufacturing Co. vs. Okisko Company*, it was objected that the appellant had no power under its charter to subscribe to the stock of the appellee, and if it had, the one before the Court was not binding, because at the time of the subscription, the cash payment was not made. In support of the latter proposition the case in 1 *Caine's Rep.*, 381, was relied on. This Court said that case is clearly distinguishable from the one before us. There, no payment was made either at the time of subscription or thereafter by the person whom it was attempted to make responsible on his subscription, while here the whole amount of the subscription was paid; in other words it is a completely executed contract. In the case referred to, the Court evidently founded their decision on the want of mutuality. "The subscriber not having paid in conformity with the authorized terms of subscription, could not have compelled the transfer of the stock to himself, he not having in any way, in part or in whole, performed the contract." 5 *Md. Rep.*, 158.

The preponderance of authority in favor of a strict compliance with the provisions of the charter, in cases of subscription, prior to the organization of the company, is such as is not to be disregarded. This Court has said, " there is no doubt that in general, a strict compliance must be shown with the provisions of the charter, but in some cases a compliance will be presumed and in others it may be waived." 16 *Md. Rep.*, 444. The distinctions between subscriptions prior and subsequent to organ-

38      v. 24.

ization, is clearly recognized in 9 *Md. Rep.*, 568, in this language :

" Commissioners are appointed to receive subscriptions to stock for the purpose of giving the subscribers a right to organize as a corporation under the charter. So soon, however, as the organization takes place, the authority of the commissioners ceases ; and all corporate powers conferred by the charter, vest. in the body politic. Such, at least, is the general rule, applying in every case where there is no special provision to the contrary. It was further held, that in that case, there were no provisions requiring the corporation after organization, to have subscriptions taken by commissioners and in no other mode.''

Hence in this case the corporation being organized by the subscription of the necessary proportion of the stock, and election of officers, succeeded to the power previously vested in the commissioners, to sell and dispose of the remaining shares, without regard to the conditions imposed on them. The act of the agent taking the subscription, being recognized by the corporation by receiving and registering the subscription, among the conditional subscriptions, was equivalent to a previous appointment of the agent for that purpose.

The objection that the subscription was void because conditional and contrary to public policy, is strongly supported by the authority cited by the appellant. 1 *Hill*, 518. 18 *Barbour*, 318. But these cases turn upon the provisions of the local statutes, and the subscriptions were made to commissioners prior to the formation of the companies, for the most part.

The first ground upon which the validity of conditional subscriptions has been impeached in the cases before cited, viz: that a contract to be binding must be " concurrent and obligatory upon each at the same time,'' (as decided in

18 *Barb.*, 318, and 21 *Wend.*, 139,) has been in more recent cases abandoned, and it is said that such a subscription is a continuing offer, until withdrawn.

But when the offer was accepted the minds of the parties met and the contract was complete. There was then the meeting of the minds of the parties, which constitutes and is the definition of a contract. The acceptance by the plaintiff constituted a sufficient legal consideration for the engagement on the part of the defendants. There was then nothing wanting, in order to perfect a valid contract on the part of the defendants. It was precisely the same, as if the parties had met at the time of the acceptance and the offer had then been made and accepted and the bargain completed at once. *Boston & Maine R. R. vs. Bartlett*, 3 *Cush.*, 227. *Conn. & Pass. R. R. vs. Baily*, 24 *Vt. Rep.*, 478. *Troy Acad'y vs. Nelson*, 24 *Vt. Rep.*, 189.

The second objection, that conditional subscriptions are contrary to public policy, is said to be peculiar to New York, and not followed in other States. *Vide Pierce on Railways*, p. 71. In 15 *B. Monroe*, 235, the Court finds the power of the corporation to accept such conditional subscriptions, under the clause of the charter of the company in that case, authorizing the President and Directors to dispose of their unsubscribed stock for the benefit of the company, and declares it does not seem to be prohibited by sound policy; that such construction is sanctioned by general usage under similar provisions in other charters. *Vide* also, 16 *B. Monroe*, 364, to the same effect. This conclusion seems to follow necessarily, from the doctrine that a conditional subscription is but a continuing offer, which is final and absolute when accepted; all subscriptions becoming thus ultimately unconditional and absolute.

If the corporation after organization, may dispose of

their stock without limitation, except so far as expressly restrained by their charter, and a conditional agreement when accepted is equivalent to an absolute contract, it would seem a necessary consequence that all contracts for stock in consideration of a particular location, when complied with by the company, would be as binding on both parties as if the contract had been absolute and unconditional. For however adverse to public policy such conditions prior to the formation of the corporation, the location and construction of the road is the peculiar province and duty of the President and Directors, and a contract made by them in execution of their corporate powers must be presumed to be made in promotion of the public interest, unless shown to the contrary.

The second prayer of the appellant, and third of the appellee, require the Court to determine the legal effect on the right of action of the appellees, of their non-compliance with the section of the original charter, requiring the road to be commenced within three years ; and of the omission of the appellees, to make any call for the payment of any part of the money subscribed by the appellant, until the 25th of June, 1857.

As to the first branch of this inquiry, it is well settled that non-compliance with the provisions of a charter, is not a matter of defence collaterally between corporations and its stockholders or debtors. It belongs exclusively to the State, to determine whether it will exercise its prerogative of forfeiting or annulling the charter. 9 *Wend. Rep.*, 351. 4 *Johns. Ch. Rep.*, 379. *Angell & Ames on Corp.*, 3d ed., 747. 4 *Eng. L. & Eq.*, 455. 24 *Vt.*, 476. *The Planters Bank vs. The Bank of Alexandria*, 10 *G. & J.*, 346.

The modification of the charter in enlarging the time of commencing and completing the work, is one of those inci-

Taggart *vs.* Western Maryland R. R. Co.

dents to all charters which comes within the constitutional power of the State to exercise, and with due notice of which, all its citizens must be presumed to contract.

It is not one of those fundamental radical changes, which diverts the funds from the original purpose to which they were dedicated, or is manifestly prejudicial to the stockholder, but comes within that class of cases in which the change was held to be auxiliary to the original object of the incorporation, and beneficial to the stockholders, *vide Pierce on Railroad Law, p. 78, note 2,* and authorities there cited.

As to the effect of the omission to make calls:

Lapse of time, not amounting to the bar of limitations, is not a defence to an action at law. The contract in this case according to the more recent authorities was a continuing offer, which was accepted by the appellees by the adoption of the "Green Spring" route on the 31st of March, 1857. No calls were made until the 25th of June following. The statute of limitations did not begin to run until the several calls were due. 6 *H. & J.,* 57.

The objection to a continuing offer, that it suspends indefinitely the liability of the conditional subscribers is sufficiently answered by the consideration, that all such offers are subject to retraction, and may be recalled, if their acceptance is unreasonably deferred. It results from these views, that the judgment below must be affirmed.

*Judgment affirmed.*

(Decided May 12th, 1866.)