## WELLERSBURG & WEST NEWTON PLANK ROAD COMPANY, *vs.* JOHN J. HOFFMAN.

A special act incorporating a Plank Road Company, appointed commissioners to open books, receive subscriptions, and organize a company of a given name, subject to the provisions of a general law on the subject of such corporations, and fixed the capital stock at 4000 shares, of $25 per share, with privilege to the company to increase the same to such an amount as they might think requisite to complete the road. The general law provided that when *ten per cent. of,* or the *whole* stock was subscribed, the commissioners should certify the fact to the Governor, who should issue letters patent erecting the subscribers, or, if the subscription was not full, those who should afterwards subscribe, into a body corporate, with all the powers incident to such a corporation, and that they "shall be capable of taking and holding the capital stock, and the *increase* and *profits* thereof, and of *enlarging* the same *in such manner and form as they shall think proper*, if such enlargement be found necessary to fulfil the intent of such special act." HELD:

1st. That under this law a corporation may be organized either under an original *partial* or *full* subscription, and when organized in *either mode*, they have the power of enlarging their capital stock in *such manner* and form as they may think proper.

2nd. So soon as the organization, under either a *full* or *partial* subscription, takes place, the authority of the *commissioners* ceases, and all the corporate powers conferred by the charter vest in the *body politic*, which can then provide for new subscriptions as it thinks fit, even if such new sub-

scriptions were to be for part of the original stock provided for in the special act.

Though a prayer be correct in part, yet if it is not so in any material part, it is error to grant it, and is ground for a reversal on appeal.

APPEAL from the Circuit Court for Allegany county.

*Assumpsit* by the appellant against the appellee upon a subscription for forty shares of stock in said Plank Road Company, at $25 per share. Plea *non assumpsit*.

*Exception.* The plaintiff offered in evidence the subscription book containing, among others, the defendant's subscription for forty shares of stock. The heading to these subscriptions is as follows:

" We, the subscribers, do hereby obligate ourselves, our heirs, executors and administrators, to pay the Wellersburg & West Newton Plank Road Company the sum of twenty-five dollars for each share of stock respectively subscribed in said company, one dollar upon each share, part of said twenty-five dollars, being paid at the time of subscribing."

The plaintiff contended that this was a valid and binding promissory note of the defendant, but the latter objected to its admissibility, and in support of his objection, offered in evidence the general law of the State of Pennsylvania, entitled, "An act regulating Turnpike and Plank Road Companies," and the special law approved the 15th of April 1850, providing for the organization of the plaintiff, the provisions of which are sufficiently stated in the opinion of this court. The plaintiff then offered in evidence the letters patent of the Governor of Pennsylvania, creating the subscribers into a body corporate, dated the 5th of July 1850. The other facts and admissions in the case are fully stated in the opinion of this court. The defendant then asked the instruction which is also stated in the opinion of this court, which the court below (PERRY, J.,) granted. To this ruling the plaintiff excepted, and the verdict and judgment being in favor of the defendant, appealed.

An exception was also taken by the defendant to the ruling of the court, admitting the subscription book in evidence, upon

the affidavit of the president of the company, under the 8th section of the stamp law of 1840, ch. 280.

The cause was argued before LE GRAND, C. J., ECCLE-STON and TUCK, J.

*J. H. Gordon* for the appellant argued:

That the court below erred in granting the instruction it did, because it assumes that the whole 4000 shares of stock authorised to be taken by the act of 1850, was to be taken by the commissioners. Their powers and duties, as prescribed by the 18th section of the act, are "to open books, receive subscriptions, and organize a company, by the name of the Wellersburg and West Newton Plank Road Company, subject to the provisions and restrictions" of the general act of 1849. And we must, therefore, refer to the general act for directions as to the mode of performing those duties, and the extent of their powers. The 2nd section of this act gives power to the commissioners to take the whole 4000 shares of stock before reporting to the Governor, but it also allows them to stop short of the 4000 shares, and report to the Governor after taking 400 shares. They did take 2034 shares, after which they reported to the Governor, who thereupon issued the patent. And after the patent issued, the commissioners held an election for officers of the company, and thereby organized it, as required by the 3rd section of the general act. And thus ended all their duties in the matter. The object for which the commissioners were appointed was to take subscribers to the stock, and do such other acts as were necessary to be done prior to the organization of the company, by the election of its officers, and they had no power to take stock or to do any other act after the officers were elected. Indeed there was no reason why they should have any such power, for the officers elected by the stockholders themselves were then fully authorised to do every act for the company which could be done for it by any one. The 2nd section directs the Governor, upon the report of the commissioners, to "*erect the subscribers, and if the subscription be not full, then those who shall afterwards subscribe,*"

into a corporation. This shows clearly that the power to take the subscriptions did not cease when the company was organized. The whole remaining number of the 4000 shares might still be taken for the company by some one, and as I have shown that the powers of the commissioners had expired, there was no other party authorised to act for the company but its president and managers. Another clause of the 2nd section, however, gives the power to the company. In express language it provides, that the corporation to be created by the patent from the Governor "shall be capable of taking and holding the capital stock, and the increase and profits thereof, and of *enlarging the sum by new subscriptions, in such manner and form as they shall think proper.*" It appears to me that there can be no doubt that this language gives the power claimed by the appellant to take the subscription. It is contended on the other side that the power here given is to increase the number of shares beyond the 4000 authorised by the special act. This, however, cannot be the object of this clause, for the power to increase the number of shares is expressly granted to the president and managers, by the 10th section of the general act. It provides that "whenever it shall be ascertained that the capital stock of such company is not sufficient to complete their road, according to the true intent of this act, it shall and may be lawful for the president and managers, at a stated or special meeting, to increase the number of shares to such an extent as they shall deem sufficient to accomplish the work, and to demand and receive the moneys subscribed for such additional shares, in like manner and under like penalties as are provided by this act, in the case of original subscriptions." The word capital stock is variously used in these acts to express the whole number of shares of stock which may be issued, or the number of shares actually subscribed and sold; and the power of "*enlarging the capital stock by new subscription,*" given in the 2nd section, is clearly different from the power to "*increase the number of shares*" given in the 10th section. In the first instance the power is to be exercised *in such manner as they may think proper;* in the second a special mode is pointed out for increasing the shares. The

power, therefore, cannot be the same, for it must be exercised differently.

*Samuel M. Semmes* for the appellee.

It is seen from the proofs in the record that the appellee's subscription was procured in Cumberland, Maryland, at the request of a certain George W. Richardson, who was employed as agent of the company, by Thomas Shriver, its president, to procure subscriptions to its capital stock. There is certainly nothing in the record to show that Mr. Shriver, as president or agent of the company, had any authority to employ Mr. Richardson as agent to procure subscriptions in Maryland. It was not a prerogative of his office, as president, to open books and solicit subscriptions, and he could not appoint agents for the company and set them to discharge that duty. It is my opinion, that none were authorised to open books and receive subscriptions but the commissioners named in the special law for the organization of the company. This company is a creature of the laws of Pennsylvania, the joint offspring of the special and general law. Its capital stock was made to consist of 4000 shares of $25 each, with the privilege of increasing the same at a meeting to be called for that purpose. When the ten per cent. on the capital stock was subscribed, the commissioners, without waiting until the subscription was full, sent their certificate thereof to the Governor. If the commissioners were not *functi officio* after signing this certificate, they and they alone had authority to take the subsequent subscriptions to the full number of the original shares, and if they had there is an end of this case. In support of their authority to do so, I refer to the *proviso* which concludes the 1st section of the general law: "That every person offering to subscribe in such books, in his own or any other name, shall, at the time of subscribing, pay to the *attending commissioners* any sum not less than one dollar, nor more than five dollars," for every share to be subscribed. This payment was to be made to the commissioners. From the heading under which the appellee's name appears in the record, it would seem that he paid $40 at the time of subscribing. Now to whom did he pay this

sum? Surely not to the commissioners, or his name would have appeared in the letters patent. The evidence also shows, that his subscription was made in Cumberland, at the request of Richardson, after the organization of the company. But was this sum paid to Richardson, and would payment to him have been a compliance with the condition prescribed by the general law, before quoted? There is no proof of such payment to Richardson, and if it was made to him, the objection already mentioned arises, that he was not the company's agent, having authority to open books and receive subscriptions. The bargain, therefore, between the company and the appellee was never consummated:

*First.*—Because the subscription was not taken by the commissioners, or any of them authorised by the special law aforesaid to open books and receive subscriptions. For where charters prescribe who shall be the agents of the company for particular purposes, in such cases the board or persons specified, and they alone, for these purposes, are or can be the agents of the corporation. *Angell & Ames on Corp.*, 150. 2 *Cranch*, 127, *Head & Amory, vs. Providence Ins. Co.* 12 *Wheat.*, 64, *Bank of the United States vs. Dandridge.*

*Second.*—Because there was no contract consummated between the company and the appellee, by reason of the latter's failure to pay the stipulated sum required at the time of subscribing. In consequence of such failure the appellee could not have procured, against the assent of the company, a certificate of the stock subscribed for by him. There was consequently no reciprocal obligation between the parties growing out of the transaction, and for want of this the consideration necessary to be shown in the case failed. *Angell & Ames on Corp.*, 299, 300, 305.

*Third.*—Because it is not shown by the record that Richardson was ever authorised by the company to procure subscriptions to its capital stock, or that the company had any cognizance whatever at the time of his acting as its agent in the matter, or that it afterwards came to know anything about it, much less to do anything to show its adoption or acceptance of the subscription, excepting what may be inferred from this suit.

*Fourth.*—Because it is not shown that Shriver, the president of the company, had any authority as such officer, or when acting unofficially, to procure such subscriptions, or to authorise other persons to procure them. ·

*Fifth.*—Because although by the 1st sec. of the general law, if within the time the subscription books at the first opening were required to be kept open, (five days,) they should not have the whole number of shares authorised by the special law subscribed, the commissioners had power to adjourn from time to time, and transfer the books from place to place, until the whole number of shares should be subscribed, they were nevertheless required to give such public notice of every such adjournment and transfer as the occasion would require. Whereas in this case, (assuming Richardson to have the authority of the commissioners,) it is shown that the appellee's subscription was not preceded by any such notice of adjournment and transfer, and consequently, for that reason alone, is not a binding one.

ECCLESTON, J., delivered the opinion of this court.

The appellant claims a reversal of the judgment in this case, because the court committed an error by instructing the jury: "That the commissioners who were authorised by the laws of Pennsylvania aforesaid to open books and receive subscriptions to the capital stock, were the only persons who had authority to receive subscriptions to the said capital stock of four thousand shares of twenty-five dollars per share, specified in said special act, and that no power existed in said company to receive subscriptions for any of said shares, and that the said pretended promissory note purporting to be made to said company, in consideration of forty shares, is a *nudum pactum*, and without authority of law."

By the 18th section of the special act referred to, commissioners were appointed "to open books, receive subscriptions, and organize a company, by the name, style and title of 'The Wellersburg and West Newton Plank Road Company,' to locate and construct a plank road from, &c., . . . . subject to all the provisions and restrictions of 'An act regulating Turn-

pike and Plank Road Companies,' approved the twenty-sixth day of January, one thousand, eight hundred and forty-nine, and the supplements thereto, as far as the same are not inconsistent with this and the following sections."

The 19th section of the special act provides: "That the capital stock of said company shall consist of four thousand shares, of twenty-five dollars per share; provided that said company may from time to time, at a meeting called·for that purpose, increase their capital stock to such an amount as, in their opinion, may be required to complete the same according to the true intent and meaning of this act."

The 1st section of the general act directs, how commissioners named in a special act shall proceed in regard to receiving subscriptions for stock. And the 2nd section then enacts, that, " When twenty persons, or more, shall have subscribed ten *per centum* on the capital stock provided for by such special act of Assembly, the said commissioners respectively may, or when the whole number of shares authorised as aforesaid shall be subscribed, they shall certify under their hands and seals the names of the subscribers, and the number of shares subscribed by each, to the Governor of the Commonwealth; whereupon it shall and may be lawful for the Governor, by letters patent under his hand and seal of State, to create and erect the subscribers; and if the subscription be not full at the time, then those who shall afterwards subscribe to the number aforesaid, into one body politic and corporate, in deed and in law, by the name, style and title designated by such special act; and by such name the said subscribers shall have perpetual succession, and all privileges and franchises incident to a corporation, and shall be capable of taking and holding the capital stock, and the increase and profits thereof, and of enlarging the same by new subscriptions, in such manner and form as they shall think proper, if such enlargement shall be found necessary to fulfil the intent of such special act."

The 10th section also provides, that, "Whenever it shall be ascertained that the capital stock of such company is not sufficient to complete their road, according to the true intent and meaning of this act, it shall and may be lawful for the presi-

dent and managers, at a stated or special meeting, convened according to the provisions of this act or their own by-laws, to increase the number of shares to such an extent as they shall deem sufficient to accomplish the work, and to demand and receive the moneys subscribed for such additional shares, in like manner and under like penalties, as are provided by this act in the case of the original subscriptions.''

From the letters patent of the Governor of Pennsylvania it appears, that when they were granted the stock subscribed for amounted, in the whole, to two thousand and thirty-four shares, and, therefore, being more than ten *per centum* of four thousand, the Governor had authority to act under the 2nd section of the general law. And in compliance with which he created and erected those who had then subscribed, and those who should afterwards subscribe, ''into one body politic and corporate.''

The defendant did not subscribe before the commissioners, but his subscription was obtained by G. W. Richardson, ''who was appointed agent of said company to get subscriptions to said capital stock in Cumberland, Maryland, by Thomas Shriver, the president of said company, after the issuing of said letters patent.'' Such is the admission stated in the record. And it is also admitted, that the four thousand shares of stock never have been all subscribed for.

Under the second section referred to, when twenty persons or more shall have taken *ten per centum* or more of the stock allowed by law, the commissioners *may* make their certificate to the Governor, and they *shall* do so when the whole number of shares are subscribed for. And, in either case, the Governor is authorised to issue letters patent to sanction the organization of the company. When he does so, where the stock has not all been taken, then those who at the time have subscribed, and also those who may afterwards take stock, are to be members of the corporation. And there is a provision which allows the corporation to enlarge their capital stock, if found necessary to fulfil the intent of the special act; which enlargement is to be made by the corporation *''in such manner and form as they shall think proper.''* By the provision for enlarging the capital

stock, it is evident the section means increasing the stock previously subscribed for, whether that consists of but part or all mentioned in the special act; because the section relates to both cases, and in reference to enlarging the stock there is no distinction made between them.   Moreover, we have seen it is declared that the corporation "shall be capable of taking and holding the *capital stock*, and the increase and profits thereof, and of enlarging *the same* by new subscriptions in such manner and form as they shall think proper."   The *same* here refers to the *capital stock*, the *increase* and *profits* of which the corporation are to take and hold.   To yield *profits* and *increase*, it must be stock actually subscribed for, and not that which is merely allowed by law to be taken.

In this section, then, we think it is provided that a corporation may be organized either under an original *partial*, or under an original *full*, subscription of stock.   And that when organized, without making any distinction in regard to the kind of subscription under which it may have been done, among other powers conferred on the corporation, is that of enlarging their capital stock in such manner and form as they might think proper.

This authority to increase the capital stock, as given by the laws referred to, in our opinion, gave to the present corporation, after it was organized under the letters patent, based upon a partial subscription of the stock mentioned in the special act, a right to increase their capital stock.   In doing which they had authority to direct the manner and mode in which subscriptions might be obtained for such portions of the four thousand shares as had not been previously taken; and, of course, we do not think the commissioners were the only persons who had authority to receive subscriptions to the four thousand shares of stock specified in the special act.

Commissioners are appointed to receive subscriptions to stock for the purpose of giving the subscribers a right to organize as a corporation under the charter. So soon, however, as the organization takes place, the authority of the commissioners ceases; and all corporate powers conferred by the charter vest in the body politic.   Such, at least, is the general rule apply-

Plank Road Co. *vs.* Hoffman.

ing in every case where there is no special provision to the contrary. And, in the laws relating to the present case, we find no provision which required this corporation, after its organization, to have subscriptions for the stock taken by the commissioners, and in no other mode, when the purpose was to enlarge the capital stock by new subscriptions, even if such new subscriptions were to be for part of the four thousand shares provided for in the special act.

Even if a prayer be correct in part, yet if not so in any material part, it is error to grant it, and is ground for a reversal on appeal.

The record shows that the subscription in dispute was made after the letters patent were issued, and the company had organized; for it is admitted, as we have said before, that the signature of the defendant " was procured by a certain George W. Richardson, who was appointed agent of said company to get subscriptions to said capital stock in Cumberland, Maryland, by Thomas Shriver, the president of the company, after the issuing of said letters patent:"

This being the state of the case when the instruction under consideration was given, the court committed an error in granting it, unless it were true that even after the letters patent had issued, and the company was organized, the commissioners " were the only persons who had authority to receive subscriptions to the said capital stock of four thousand shares, of twenty-five dollars per share, specified in said special act, and that no power existed in said company to receive subscription for any of said shares."

That this, in our opinion, is not true, will appear from what has been said in regard to the authority of the commissioners, and in reference to the power of the company after its organization. And believing the instruction to be erroneous, the judgment must be reversed.

The plaintiff's bill of exceptions presents the only matter for our consideration, as there is no appeal on the part of the defendant.

*Judgment reversed and procedendo ordered.*