(Decided 3d March, 1871.)

---

HOLKER HUGHES *vs.* THE ANTIETAM MANUFAC-TURING COMPANY OF WASHINGTON COUNTY.

*Construction of Article XXVI, sections 40, 43, 45 and 49, of the Code of Public General Laws—Cor-porations—Interpretation of a Statute—Certificate of Incorporation — Acknowledgment — Liability of subscribers — Withdrawal of subscription—Altera-tion of instrument after signing—Cumulative reme-dies—Evidence—Notice—False representations—Right to assess Stockholders.*

The certificate of incorporation of the A. M. Co. declared that the incorpo-rators "desiring to form a company for the purpose of manufacturing, under the name and style of the A. M. Co. of Washington Co , have fixed the capital stock of said company at $150,000: said capital stock shall consist of *five hundred* shares at $100 per share; the term of exist-

ence of said company or corporation not to exceed the term of forty years," &c. HELD:

1st. The discrepancy in the above data is not fatal: the subscription of the whole capital stock at a fixed value per share, would necessarily determine the aggregate number of shares.

2d. "Not to exceed forty years" is sufficiently definite. It is to be construed "to be at least forty years."

Section 40 of Article 26, (General Corporation Act) of the Code, provides that "any five or more * * persons who may desire to form a company for the purpose of carrying on any manufacturing business, may make, sign and acknowledge before some officer competent to take the acknowledgment of deeds, and record the same, &c., * * a certificate in writing in which shall be stated the corporate name of the company, * * always to include the name of the county or city in which the business is carried on, the amount of the capital stock of said company: the term of its existence not to exceed forty years, the number of shares of which said stock shall consist," &c. Sections 43 and 45 provide for the management of such corporations, by not less than four nor more than twelve directors, who shall be stockholders therein, and who shall be (except the first year) annually elected by the stockholders by ballot. Section 49 authorizes the directors to call in instalments from the stockholders under penalty of forfeiture of stock, &c., if payment be not made "within ninety days after a personal demand, or notice requiring such payment shall have been published nearest to the place where the business of the corporation shall be carried on." In construing these sections, it was HELD:

1st. That the acknowledgment of the certificate of incorporation by all the subscribers is not required: acknowledgment by five or more is sufficient.

2d. That a statement of the trade which the corporation proposes to carry on is not an essential part of its name.

3d. That the acknowledgment by the president and directors for the first year is not required.

4th. That subscriptions of stock made in contemplation of incorporation under this law are binding, and furnish ground for an action of *assumpsit.*

5th. That the remedy against delinquent subscribers by forfeiture and sale of their stock, does not exclude the right of action for the amount of their subscription.

6th. That a written notice through the mail is not a compliance with the requirements of section 49 of the statute.

7th. That public policy requires the provisions of this Act to be construed liberally.

The original certificate is admissible to prove the fact of the subscription of a party signing it.

In a suit brought to recover a subscription made in contemplation of incorporation, it is necessary for the plaintiff to prove its corporate existence, and if the recorded certificate substantially complies with the requirements of the Code, it is admissible in evidence for that purpose.

In order to avoid a contract of subscription it must appear to have been made upon the faith of false representations in regard to a matter of fact material to the success of the enterprise. The mere holding out by an agent of flattering prospects is no ground of avoidance.

A subscriber to capital stock can neither withdraw nor be released without the consent of all the subscribers. The directors have no general power to release.

The capital stock having been changed, after subscription, from *fifty* to *one hundred and fifty* thousand dollars, without assent, or subsequent acquiescence on the part of a subscriber, he is discharged from all liability on account of his subscription. And the acknowledgment by him of the certificate, if at the time he was ignorant of the change, cannot be construed as a new contract.

Where the capital stock and the number of shares are fixed in the articles of association, no valid assessments can be made against a subscriber until all the shares are taken, unless it be so provided in the articles or in the general law under which the corporation is formed.

APPEAL from the Circuit Court for Washington County.

The facts are sufficiently stated in the opinion of the Court. At the trial below, the plaintiff, the Antietam Manufacturing Company, offered, among others, the following prayer, which was granted:

If the jury find, that prior to the creation of the plaintiff as a body politic, or corporation, the defendant and others, with a view to the creation of the plaintiff as a corporation, agreed to subscribe to its capital stock, and that the defendant did, in

fact, subscribe in writing for fifty shares of the said capital stock, and that the value of each share so subscribed for, was fixed at $100, and that such contemplated corporation was intended for manufacturing purposes; and also find, that afterwards the plaintiff was incorporated and created a body politic, by five or more white male persons, making, signing and acknowledging before a justice of the peace of the State of Maryland, in and for Washington county, a certificate in writing, in which is stated the corporate name of the plaintiff, including the name of the county in which its business is carried on, the amount of its capital stock, the term of its existence not exceeding forty years, the number of shares of which the capital stock should consist, the number of managers or directors, and their names, to manage the concerns of the company for the first year, and the name of the county in which the operations of the company were to be carried on, and that such certificate so signed and acknowledged was afterwards recorded, and that the plaintiff was duly organized under such certificate, and that the defendant himself signed and acknowledged said certificate with others, and that after the organization of the plaintiff as a body politic, calls for the payment of subscriptions were made as follows, to wit: twenty-five per cent. thereof to be paid on July 15th, 1867, ten per cent. thereof to be paid September 1st, 1867, and fifteen per cent. thereof to be paid on December 1st, 1867, of which the defendant had notice, or of which notices directed to the defendant were left in his post office, and that the defendant hath refused to pay the same, according to the amount or proportion of his subscription embraced in the said several calls, then the plaintiff is entitled to recover to the extent of the said calls.

The following were among the prayers of the defendant:

2. If the jury shall believe from the evidence, that at the time the defendant signed the subscription paper, the capital of the plaintiff was to be but $50,000, and that it was then so written in said paper, and the same was at any time afterwards

changed by an interlineation, so as to make it read $150,000, and that the defendant did not know of said change, and never assented to the same, then the defendant cannot be required to pay the same, and is exonerated from his subscription, and the verdict is to be found for him.

3. If the jury shall believe from the evidence, that at the time the defendant signed said paper, it was represented to him by the person who obtained his signature, that the capital of the plaintiff was to be $50,000, and that at least six per cent. interest on said capital would be paid by rents from the Emmert property, to be bought by the plaintiff the first year, and for that sum, and that afterwards the trustees could build or do as they please with the property, and shall further find from the evidence, that said property was so bought, but not rented, but forthwith changed and improved at heavy expense and without the assent of the defendant, then the plaintiff is not entitled to recover said subscription, or any part thereof in this action.

8. If the jury shall believe from the evidence, that there were other subscribers to said paper before the same was acknowledged and recorded, or after it was so acknowledged or recorded, if they shall find it was acknowledged and recorded, and that some or any of them asked to be released, and were released from their subscriptions, and their names erased from the said paper, and without consulting the defendant, then the defendant was not bound by his subscription, and if then, or any time after, and before any expenditures were made by the plaintiff, if the jury shall find such were made, he notified or requested, in person or by another, his name to be erased and his subscription to be annulled, then the plaintiff cannot recover in this action, though the jury may believe from the evidence than no action was taken upon his notification or request.

The Court rejected all the prayers of the defendant, except the second, which they granted with a modification, as follows:

If the jury shall believe from the evidence, that at the time the defendant signed the subscription paper, the capital of the plaintiff was to be but $50,000, and it was then so written in said paper, and the same was at any time afterwards changed, after the same was acknowledged by the defendant, by an interlineation, so as to make it read $150,000, and that the defendant did not know of said change, and never assented to the same, then the defendant cannot be required to pay the same, and is exonerated from his subscription, and the verdict is to be found for him.

The defendant excepted to the ruling of the Court, and the verdict and judgment, being against him, he prosecuted this appeal.

The cause was argued before BARTOL, C. J., STEWART, BRENT, MILLER and ROBINSON, J.

*Wm. T. Hamilton, Daniel Weisel* and *Wm. Schley,* for the appellant.

*Andrew K. Syester, George Schley* and *Albert Small,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

This is an action of *assumpsit* by the appellee, claiming to have been incorporated in pursuance of the 40th section of Article 26, of the Code of Public General Laws, to recover certain unpaid instalments, alleged to be due on the subscription of the appellant to its capital stock.

The following is a copy of the recorded certificate, to which the subscription is affixed: "The undersigned, free white citizens of the State of Maryland, desiring to form a company for the purpose of manufacturing, under the name and style of the *Antietam Manufacturing Company of Washington County,* have fixed the capital stock of said company at $150,000; said capital stock shall consist of five hundred

shares, at $100 per share, the term of existence of said company or corporation not to exceed the term of forty years. The company shall be managed by a president and ten directors for the first year. In testimony whereof we have each subscribed for the number of shares set opposite our names." To which is affixed the subscription of the appellant, for *fifty shares, five thousand dollars.*

This recorded certificate was offered in evidence to prove the incorporation of the appellee, and its admissibility for that purpose is objected to on the ground that it does not comply with the requirements and conditions precedent, prescribed by section 40, Article 26 of the Code. It becomes necessary, therefore, to determine what are the requirements and conditions prescribed by the statute. Section 40 provides that: "Any five or more free white persons, who may desire to form a company for the purpose of carrying on any manufacturing business, may make, sign and acknowledge, before some officer competent to take the acknowledgment of deeds, and record the same in the office of the clerk of the Circuit Court for the county * * * a certificate in writing, in which shall be stated the corporate name of the company, the corporate name always to include the name of the county or city in which the business is carried on, the amount of the capital stock of said company; the term of its existence not to exceed forty years, the number of shares of which said stock shall consist, the number of trustees, directors or managers, &c., who are to manage the affairs of the company for the first year," &c. The certificate in this case is claimed to be defective in many essential particulars; and first, because it does not appear upon its face to have been acknowledged before the justice of the peace by all of the subscribers. This, however, is not required by the statute; on the contrary, it expressly provides, that "any five or more persons" * * * "who may make and acknowledge a certificate in writing," &c., * * * "shall be a "body politic and corporate." The acknowledgment, therefore, by all of the subscribers, is not a

Hughes *vs.* Antietam Manufacturing Co. of Washington Co.

condition precedent, nor can the refusal of one or more deprive those who do join in the acknowledgment, from claiming the right of incorporation, provided they *be five or more in number.* Such a construction is neither sustained by the spirit nor letter of the Act. The certificate in this case does appear upon its face to have been acknowledged by *five persons,* and if the proof on this point be confined to the record copy solely, a question which we are not to be understood as deciding, we are of opinion the objection to it on this ground cannot be sustained.

Then again, it is said the amount of the capital stock and the number of shares are not stated with sufficient precision and accuracy. This objection, however, cannot apply to the capital stock, because it is fixed at $150,000, nor to the value of the shares, for it is fixed also at $100 per share; but the fatal error insisted on is in stating the number of shares to be *five hundred.* This is a mistake, however, apparent on the face of the certificate itself, because, if the capital stock is fixed at *one hundred and fifty thousand dollars,* and the value of the shares at *one hundred dollars each,* it follows, as a matter of course, that the whole number of shares must be *fifteen hundred,* and not five hundred as stated. Such an error could not certainly deceive or injure any one—the subscription of the whole capital stock, at a fixed value per share, would necessarily determine the aggregate number of shares.

But it was further insisted, that 'the particular trade to be carried on by the company ought to have been stated in the certificate. But no such requirement is prescribed by the 40th section under which the appellee was organized. It does provide that the corporate name of the company shall be stated, which name shall always include the county where the business is carried on—not that the particular trade shall be stated or affixed to the name. We cannot understand why such a requirement should be considered as an indispensable condition precedent, for although a name is necessary in order to identify and distinguish the corporation, by which it may

*sue* and *be sued*, be known as *grantor* and *grantee*, and perform other acts incident to its corporate existence, it must be admitted that "the *Antietam Manufacturing Company of Washington County*," the name by which the appellee is designated in the certificate, is sufficient to answer all of these purposes.

But again, it is said the recorded certificate does not show affirmatively on its face, that the president and directors therein named, to manage the affairs of the company for the first year, were parties to the acknowledgment of the same before the justice of the peace, prior to its being recorded. This qualification, however, is not required by law. The 43d section provides that they shall be *stockholders*—not that they must have signed or acknowledged the *certificate*, and inasmuch as it appears from the *original certificate* offered in evidence to prove the appellant's subscription, for which purpose it was clearly admissible, that they were *stockholders*, this objection cannot be sustained. We think, also, the term of years, not to *exceed forty years*, is sufficiently definite. As used in this certificate, it means, and is to be understood as creating a term for at least forty years, the limit prescribed by the statute.

These objections seem to us to be more technical than sound. The policy of the law, as plainly indicated by the several provisions of the general corporation act, is to encourage the formation of these and other like companies, in order that not only the subscribers, but the public, may share the advantages, supposed to flow from combined capital and labor; and whilst the requirements of the law are to be *fairly and substantially complied with*, the rights and franchises of corporations and the interests of stockholders are not to be *frittered* away by technicalities, nor sacrificed to a *strained* construction of the statute.

Assuming then, in a suit brought to recover a subscription made prior to and in contemplation of being incorporated, it is necessary for the appellee to prove its corporate existence, and

such undoubtedly is the law in this State, we are of opinion that the *recorded certificate* substantially complies with the requirements of section 40 of Article 26, and was therefore admissible in evidence for that purpose. The question then as to whether the original certificate could be offered to show that the acknowledgment of other subscribers had been omitted in recording the same, becomes immaterial.

The right, however, of the appellee to maintain this suit, is further denied on the ground that the law under which it was incorporated, does not require or contemplate any subscriptions prior to the *factum of incorporation;* and a subscription thus made was supposed to stand on a different footing from one under an Act of incorporation by the Legislature, which provides for the taking of subscriptions by commissioners or persons named in the Act. In the one case it was said, there was a party *in esse* competent to make and receive a promise; in the other, certain *conditions precedent* were to be performed before the *corporate existence* is completed. If, however, this objection be sound, it applies with equal force to a subscription made in contemplation of a charter by the Legislature, for in such a case the organic life is derived through the statute, and until it is passed, the proposed company may be said not to have any existence. And yet it is well settled, that subscriptions thus made are binding and may be enforced after the charter is granted by the Legislature. If so, where is the distinction in principle between the binding force of such a subscription, and one made in contemplation of being incorporated under a general corporation law. In each case the contract is made by the subscribers with each other, the consideration of which is the right to a given number of shares upon the incorporation of the company, whether it be under a special or a general Act of the Legislature. And hence in the several States where this question has arisen upon subscriptions to a certificate or articles of association, formed for the purpose of being incorporated under a general corporation law, it has been held that such subscriptions are

326        MARYLAND REPORTS.

Hughes vs. Antietam Manufacturing Co. of Washington Co.

binding and may be enforced after the organization of the company.

In *Staunton, President of the Exchange Bank, vs. Wilson*, 2 *Hill*, 153, where the defendant signed articles of association, and subscribed prior to the incorporation, it was held that this fact constituted no objection to the recovery. "It is true," say the Court, "the company did not come into existence till several months after the defendant's subscription purports to have been made, and the power of the president to sue did not arise until that time. The contract, though dated before, must be considered as taking effect only from the 1st of January." And in the *Hamilton and Dearsville Plank Road Co. vs. Rice*, 7 *Bar.*, (*N. Y.*,) 157, where the subscription was made also to articles of association, the Court said : "We think too that the fact that the corporation was not *in esse* when the agreement was signed, is not of itself a sound objection to the right of maintaining an action upon it." See also *Tonica and Petersburg R. R. Co. vs. McNeely*, 21 *Illinois*, 71 ; *Johnston vs. Ewing Female University*, 35 *Illinois*, 518, and *Heaston vs. Cincinnatti and C. R. R. Co.*, 16 *Ind.*, 275. The objection that the subscription was made prior to the incorporation of the appellee cannot therefore be sustained.

But conceding the validity of the subscription, it is contended that an action of *assumpsit* will not lie, because it does not contain an *express promise to pay*, and that the only remedy against the delinquent subscriber is by a forfeiture and sale of the stock under the 45th section. It may be true, that an *express promise* in so many words, may not be found in the subscription, but it was made for a *given number of* shares and at a *fixed money value*, and when construed in connection with the law under which the company was to be organized, we are very far from admitting it does not amount to an express promise to pay for the shares in the manner and upon the conditions therein prescribed. The purpose of the appellant and his co-subscribers in signing the articles of

association and subscribing for a given number of shares, was to organize a company and furnish capital sufficient to carry on the *manufacturing* business, from the successful prosecution of which they expected to realize *a profit* on the money thus invested. To this end property was to be purchased, materials bought, labor performed, and debts incurred, and these could only be done and accomplished by the payment of the stock subscribed. Forfeiture and sale of the shares might fail to realize the means necessary to effect these objects, and particularly if the prospects of success were not so flattering after the organization as the more hopeful projectors anticipated. If, therefore, no action will lie to enforce the payment of the subscriptions, not only must the object and purposes for which the company was organized fail, but the capital stock of those who have promptly paid, relying upon the good faith of their co-subscribers, must also prove an entire loss. It has been held, it is true, in Massachusetts and New Hampshire, that the only remedy against the delinquent subscriber is by forfeiture and sale of the stock; but in reviewing these decisions, Mr. REDFIELD says, "they arose under charters in which the capital stock and number of shares were *not fixed,* and he admits it to be firmly established in this country and in England that where the stock of the company is defined and divided into a certain number of shares, a subscription for shares whether it contains an express promise to pay or not, is regarded as an agreement on the part of the subscriber to pay for the same according to the terms and provisions of the charter, and that the remedy by forfeiture and sale is cumulative merely." 1 *Redfield on Railways*, 163. The many cases referred to by the author fully sustain this general rule, and in one of them, the *Hartford and New Haven R. R. Co. vs. Kennedy*, 12 *Conn.*, 500, where the decisions in Massachusetts relied on by the appellant were ably reviewed, the Court say: "The act of becoming a stockholder pursuant to the provisions of this charter, is one from which the law raises a promise to pay the instal-

ments legally assessed and demandable. The common law furnishes a remedy for a violation of this engagement by an action of *assumpsit.* The subsequent enactment authorizing the directors to sell the stock is affirmative in its terms. It does not expressly or by implication take away the previous remedy which the common law has provided. No words are used indicative of an intention to deprive the corporation of their previous existing remedy—no necessity is perceived why they should be deprived of it—and every consideration arising from public policy or connected with good faith and common honesty demands that this remedy should continue in full force."

But it is further insisted, that the appellant had the right to withdraw his subscription after the acknowledgment of the certificate before the justice of the peace, and at any time prior to its being recorded. We think, however, it is clear, both upon principle and authority, he cannot. As we have before said the subscription is in itself a contract on the part of the appellant to pay for the shares thus taken in the manner and according to the terms prescribed by law, in consideration of which he acquired the right to demand the same upon the organization of the company, and of which he could not be deprived, either before or subsequent to the incorporation. The obligation to pay on the one hand, and the right to demand on the other, created a mutuality of contract, binding as between the co-subscribers, the parties thereto, and could not be discharged by the act of one, without the assent of the other. And this too seems to be well settled. In *Angell & Ames on Corporations, sec.* 523, the rule is thus stated: "A person subscribing *before the organization* of a proposed incorporated joint stock company, raises a mutuality in his contract which will render him liable to the company after incorporation. A subscriber or partner in an intended undertaking, subscribing an agreement to take measures to carry out the same, cannot discharge himself of liability or repudiate the concern to which he may have thus pledged

himself; and if an Act of the Legislature has been passed for effectuating the purpose of the undertaking, by which certain obligations are created, such an original subscriber is not exonorated from the liabilities imposed by the Act, by having, during the progress of the bill, renounced all further connection with the undertaking, and desired that his name might be in consequence omitted from the Act."

In *Kidwelly Canal Co. vs. Raby*, 2 *Price*, 93, 1 *Ex.*, where this question came directly before the Court, RICHARDS, B., said : " If *Raby* had not endeavored to withdraw, there could have been no doubt of his liability ; then the question becomes, whether he has in fact withdrawn ; and I think he has not, inasmuch as he could not do so without the consent of all those with whom he had become engaged in the undertaking." The subscription in this case was made in contemplation of a charter by the Legislature, but in *Lake Ontario, &c. R. R. Co. vs. Mason*, 16 *N. Y.*, 463, the rule thus laid down was recognized and extended to a subscription to articles of association, signed with a view of being incorporated under a general law, and SELDEN, J., said : " If the contract to pay for and take the stock was a valid contract, made upon a sufficient consideration, then subscription was not open to revocation until the incorporation of the company was perfected, the other subscribers had an interest in its execution and performance, of which they could not be deprived by the act of the defendant."

We find no error in the rejection of the appellant's third prayer. In order to avoid the contract of subscription, it must appear to have been made upon the *faith of false representations* of the agent, in regard to a *matter of fact, material to the value and success of the enterprise.* The mere statement that the rents of the Emmert property would pay six per cent. on the capital stock for the first year, and then the company could determine whether to build or not, &c., must be regarded as the mere expression of opinion in regard to the success of the undertaking, upon which the appellant had no

right to rely. In all probability, he was as competent to judge of the success, or profits to be realized as the agent, and contracts thus deliberately made, and upon the faith of which others may have acted, are not to be avoided, because of the flattering prospects held out by parties soliciting subscriptions.

The appellant's eighth prayer was also properly rejected. This was a joint undertaking, and the consideration of the contract of subscription was the right to share the profits arising therefrom. Under such circumstances, a subscriber could neither withdraw nor be released from his subscription without the consent of all the co-subscribers, and the fact that the directors or managers undertook to release certain parties, cannot operate in any manner to discharge the appellant from his obligation.

The statute under which the appellee was organized, confers no such power on the directory, and the exercise of it cannot affect, one way or the other, the liability of the subscribers who may have been thus released.

We think, however, the Court erred in the modification of the appellant's second prayer. The change of the capital stock from fifty to one hundred and fifty thousand dollars, after his subscription, and without his assent or subsequent acquiescence, discharged him from all liability on account of the same, and the mere acknowledgment by him of the certificate before the justice of the peace, if, at the time, he was ignorant of the change or alteration thus made, cannot be construed as a new contract on his part, nor estop him from relying on this defence in a suit by the appellee—the party by whom the change was made.

We think, also, the Court erred in regard to the notice prescribed by section 49 of Article 26. It has been decided, we are aware, in one or two States, under statutes similar in many respects to the one under which the appellee was organized, that notice of the calls or assessments is only necessary to the forfeiture and sale of the stock; but in referring to

these cases, REDFIELD says : " They are contrary to the general course of decisions upon the point, and somewhat at variance with the idea of a call or assessment." 1 *Redfield on Railways*, 147, *note.* To say that it is unnecessary, because the subscribers, who may be living in different parts of the county, and perhaps the State, are presumed in law to know all that is done by the directory, seems to us to be raising a presumption against the truth itself. But apart from these views, we think the 49th section, in express terms, provides, that notice shall be given. It says the directors, trustees or managers " may call in and demand from the stockholders respectively, all sums of money by them subscribed, at such times," &c. How demand? It certainly was not the intention of the Legislature that it should be made for the first time through a suit, without giving the subscriber an opportunity to pay the instalment thus assessed. Nor was such a construction put upon the statute by the appellee, for we find that written notice was mailed to the appellant. The 49th section, however, requires that there should be a *"personal demand,"* or *" notice published,* nearest to the place where the business of the corporation shall be carried on." Constructive notice by the mail is not a personal notice, although in some cases by express statutory provision, it is sufficient to bind parties. Here, however, the manner of giving notice is prescribed by the law under which the calls are made, and it was the plain duty of the directors to have complied strictly with its requirements in this respect. They had no right to dispense with the mode and manner of notice thus prescribed, and where, by positive law, *personal notice* is required, a written notice through the mail is not a compliance with the statute.

There is another objection, which, so far as the record discloses, is fatal to the right of the appellee to recover in this suit. The capital stock of the company, and the number of shares, and their par value per share, are fixed in the recorded certificate, and there is no provision either in the articles of association, or the subscription itself, or the general law under

which the appellee was organized, authorizing the directors to make calls or assessments before the whole capital stock is taken. We take the general rule to be, that where the capital stock and the number of shares are fixed in the articles of association or recorded certificate, no valid assessments or calls can be made against a subscriber until all the shares are taken, unless there be a provision to that effect either in the certificate or general law under which the company is organized, and for the reason that the success of the enterprise, and the profits to be realized therefrom, may depend entirely upon having the full amount of the capital taken up. *Cabot and West Springfield Bridge Co. vs. Chapin, et al.*, 6 *Cushing*, 50; *Contoocook Valley Railroad vs. Barker*, 32 *N. H.*, 370; *Fox vs. Clifton*, 6 *Bing.*, 773; *Wontner vs. Shairp*, 4 *Man. Grang. & Scott*, 404; *Pitchford vs. Davis*, 5 *Meeson & Welsby*, 2; *Norwich & Lowestoft Comp. vs. Theobald*, 1 *Moo. & Mal.*, 151, and 1 *Red.*, 176. The author says: "And where the charter of a railway company requires their stock to consist of not less than a given number of shares, assessments cannot be made before the required number is taken." This point was not relied on in the argument, and we do not rest our decision upon it, for although the record shows only about one-third of the stock was taken, it may appear by proof not before us, that the whole capital stock was subscribed.

Being of opinion that the Court erred in the modification of the appellant's second prayer, and also in granting the appellee's first prayer, so far as regards the notice of the assessments or calls, the judgment will be reversed, and a new trial awarded.

*Judgment reversed,*
*and new trial awarded.*

(Decided 3d March, 1871.)